Mark J. BENNETT; Charles S. Frumin; Bobbie Carinio; Mark R. Spengler; Jerry Beck; Let the People Decide; Citizens for a Constitutional Convention, on behalf of themselves and others similarly situated, Plaintiffs–Appellants,

v.

Dwayne D. YOSHINA, Chief of Elections Officer of the State of Hawaii; Mazie K. Hirono, Lieutenant Governor of the State of Hawaii, in their individual capacities; Elections, Office Of; Benjamin J. Cayetano, Governor of the State of Hawaii, Defendants–Appellees.

No. 00–16137.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2001

Submission Withdrawn May 14, 2001

Resubmitted Aug. 1, 2001 [1]

Filed Aug. 7, 2001

---

**1.** This appeal was taken under submission following oral argument on May 14, 2001. The same day, the panel issued an order withdrawing submission pending the outcome in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Hu-* *man Resources,* 531 U.S. 1004, 121 S.Ct. 1835, 149 L.Ed.2d 855 (May 29, 2001). *Buckhannon* has since been decided, and we resubmit the case concurrent with the filing of this opinion.

Mark J. Bennett, McCorriston, Miho, Miller & Mukai, Honolulu, Hawai'i, for the plaintiffs-appellants.

Steven S. Michaels, New York, New York, for plaintiff-appellant Mark J. Bennett.

Dorothy D. Sellers, Office of the Attorney General, Honolulu, Hawai'i, for the defendants-appellees.

Before: B. FLETCHER, CANBY, and PAEZ, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

In *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 531 U.S. 1004, 121 S.Ct. 1835, 149 L.Ed.2d 855 (May 29, 2001), the Supreme Court announced that a party is not entitled to attorney's fees intended by statute for a "prevailing party" if it obtained the relief it sought only as a catalyst, in other words if it "achieve[d] the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 1838. In this case, plaintiffs claim that they are prevailing parties because the Hawai'i legislature passed a law that did what plaintiffs sought to have done in litigation. Because plaintiffs advance only a catalyst theory, we affirm the district court's decision to deny attorney's fees.

## I.

This appeal is the denouement of a complex election saga that involved challenges in state and federal courts and a state legislature. This election ended, as all good elections should, not in the courts but with the political branches and the voters.

In Hawai'i's November 1996 election, the electorate was asked to decide whether to hold a state constitutional convention. 163,869 votes were cast in favor of a constitutional convention, 160,153 votes were cast against, 45,245 ballots had no vote cast on the question, and 90 "over-votes" were marked both yes and no. Thus, the blank ballots and over-votes were determinative. If "yeses" were to be compared only to "nos," the measure would have passed and a convention would have been held. If the blank ballots and over-votes were counted as "ballots cast," they would have the same effect as "no" votes and the measure would have failed. On appeal from a lawsuit filed in state court, the Supreme Court of Hawai'i chose the latter interpretation and ordered the Chief Elections Officer to certify that the constitutional convention question had been rejected. *Hawai'i State AFL–CIO v. Yoshina,* 84 Hawai'i 374, 935 P.2d 89, 98 (1997). This opinion gave rise to the current litigation. Plaintiffs, a group of individuals and organizations who desired a constitutional convention, sued various state officials and entities in federal court, alleging that the decision of the Supreme Court violated the voters' Fourteenth and First Amendment rights. On July 11, 1997, the district court agreed, and ordered a special election to be held within sixty days. The defendants appealed and a panel of this court issued a stay, on September 10, 1997, and ultimately reversed the district court's decision, on March 27, 1998. *Bennett v. Yoshina,* 140 F.3d 1218, 1228 (9th Cir.1998) ("*Yoshina I*"), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999).

On January 28, 1998, two months before our final decision but after we had issued

the stay, a bill was introduced in the Hawai'i House of Representatives providing for a second vote on the constitutional convention question at the November 1998 general election; the House passed the bill on February 20, 1998. On April 14, 1998, after we had reversed the district court and while we were considering plaintiffs' petitions for rehearing and rehearing en banc, the Senate passed the bill. Two months later, on June 22, 1998, the governor signed the bill into law, designated Act 131. We denied the plaintiffs' petitions for rehearing the following day. On November 3, 1998, the constitutional convention question was voted on by the general electorate for a second time, and it was overwhelmingly and unambiguously rejected.

The effect of the passage of Act 131 was to moot further consideration of the appeal, which was still before this court on plaintiffs' motions for rehearing and rehearing en banc. The plaintiffs made a motion for attorneys' fees. Accepting the "catalyst theory" of prevailing parties and recognizing that a substantial factual question remained, we transferred the motion to the district court to decide whether plaintiffs could establish a "clear causal relationship between this lawsuit" and the passage of Act 131. District Court Judge Ezra, whose order we had reversed, recused himself, and District Court Judge Mollway was assigned to decide the attorney's fees question. The district court issued a detailed order denying plaintiffs' motion. *Bennett v. Yoshina,* 98 F.Supp.2d 1139 (D.Haw.2000) (*"Yoshina II"*). Plaintiffs appeal from this order, and we affirm.

## II.

 Our earlier opinion and the mooting effect of Act 131 disposed of all of the substantive issues in the plaintiffs' complaint. The district court issued its published order on the fees motion on May 15, 2000. No judgment was subsequently entered, but our jurisdiction does not depend on the entry of a judgment following the final disposition of a post-judgment fee motion when nothing else is left to litigate. *Cf. Gates v. Rowland,* 39 F.3d 1439, 1450 (9th Cir.1994). Plaintiffs' notice of appeal was timely filed within 30 days of the entry of the order. 28 U.S.C. § 2107. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

 In *Buckhannon,* the Supreme Court held that the term "prevailing party," as it is used in various attorney's fees statutes, requires a "material alteration of the legal relationship of the parties," *Buckhannon,* —— U.S. at ——, 121 S.Ct. at 1840 (quoting *Tex. State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)), and that the so-called "catalyst theory" fails to satisfy this requirement because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* Thus, "the 'catalyst theory' is not a permissible basis for the award of attorney's fees under the [Federal Housing Amendments Act] and [Americans with Disabilities Act]." *Id.* at 1843 (citations omitted). In so holding, the Court overturned our precedents, and the precedents of most of our sister circuits, that had allowed attorney's fees if the plaintiff's action acted as a catalyst to achieve the sought-after result. *Id.* at 1838 n. 3 (listing cases including *Kilgour v. City of Pasadena,* 53 F.3d 1007, 1010 (9th Cir.1995)).

 There can be no doubt that the Court's analysis in *Buckhannon* applies to statutes other than the two at issue in that case. Specifically, the provision at issue in this case, the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, was cited by the Court as a "nearly identical [fee-shifting] provision[ ]" to the two at

issue in *Buckhannon*, —— U.S. at —— n. 4, 121 S.Ct. at 1839 n. 4, and the Court noted that it has interpreted Congress's various fee-shifting provisions consistently. *Id.* The concurring and dissenting justices also specifically discussed § 1988 in their analyses. *Id.* at 1849 (Scalia, J., concurring); *id.* at 1857–58 (Ginsburg, J., dissenting). We hold that to qualify as a "prevailing party" under 42 U.S.C. § 1988 a party must obtain a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 1840. The catalyst theory no longer applies to this act, and any of our precedents to the contrary are overturned.

■ Plaintiffs advance only the catalyst theory in this case. They did not obtain any "material alteration of the legal relationship of the parties" in their favor. *Id.* In fact, plaintiffs suffered a complete defeat on the merits in this court. *Yoshina I,* 140 F.3d at 1228. As the Supreme Court has now made clear, even if Hawai'i's political branches were motivated to enact Act 131 solely by this litigation, this result "lack[ed] the necessary judicial *imprimatur*" to qualify plaintiffs as prevailing parties. *Buckhannon,* —— U.S. at ——, 121 S.Ct. at 1840.

■ The Supreme Court's new rule has simplified this appeal. We need not address the parties' other claims. Although the district court ruled before *Buckhannon* was decided, we can affirm on any basis supported by the record. *Balint v. Carson City,* 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc). The decision of the district court to deny attorney's fees is

**AFFIRMED.**