**Elise OSTBY, et al., Plaintiffs,**

v.

**OXNARD UNION HIGH, et al., Defendants.**

**No. CV01–8372AHMVBKX.**

United States District Court, C.D. California.

June 11, 2002.

---

Patrick S. Smith, Patrick S. Smith Law Offices, Burbank, CA, Thomas Edward Beltran, Margaret S. Oppel, Beltran Beltran Smith & Oppel, Burbank, CA, for plaintiffs.

Cynthia A. Yount, John E. Hayashida, Parker & Covert, Tustin, CA, for Oxnard Union High, defendant.

Linda Randlett Kollar, Lil G. Delcampo, Hooper Lundy & Bookman, Los Angeles, CA, for Ventura County Behavioral Health, defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

MATZ, District Judge.

### I.

### INTRODUCTION

This case involves solely a claim for attorney's fees and costs under the Indi-

viduals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* Defendant Oxnard Union High has moved for judgment on the pleadings. Having considered the papers submitted and the file in the case, the Court has determined that this matter is suitable for submission to the Court without oral argument. *See* Local Rule 7–15; Fed.R.Civ.P. 78. For the reasons stated herein, Defendant's motion is DENIED.

### II.

### FACTUAL ALLEGATIONS

On September 27, 2001, Plaintiffs filed a complaint for award of attorney's fees and costs. The following facts are alleged in the complaint, and are taken as true for purposes of this motion. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir.1988).

In September 1997, Elise Ostby enrolled in Rio Mesa High School in the Oxnard Union High School District ("District"). Complaint ¶ 10. She had several different handicaps, including learning disabilities, speech and language problems possibly resulting from Asberger's Syndrome (a form of Autism) and serious emotional disturbance. Complaint ¶ 9. She had been enrolled in special education since the fifth grade. *Id.* Elise experienced extreme difficulties in school both academically and behaviorally because of her handicaps. Complaint ¶ 10.

On December 10, 1997, Elise's parents, Norman and Shirley Ostby, attended a meeting with representatives of the District to discuss creating or modifying Elise's Individualized Education Program ("IEP").[1] Complaint ¶ 11. Under the IDEA, educational programs for handicapped children are designed and imple-

---

1. It is unclear from the complaint whether Elise already had an IEP in place at the time

the Ostbys attended the December *10, 1997* meeting.

mented through an IEP, which contains statements of the disabling conditions that qualify the child for special education services, annual goals and short-term objectives, and the child's special education placement. Complaint ¶ 7. Elise's behavioral and emotional problems were getting worse, but the District representatives were unwilling to modify her IEP. Complaint ¶ 11.

On December 27, 1997, Elise was admitted to a psychiatric hospital. Complaint ¶ 12. On January 5, 1998, Elise's parents requested a full assessment of Elise's eligibility for special education and a referral to Ventura County Behavioral Health ("VCBH"), which under California law shares interagency responsibility for providing mental health services to emotionally disturbed children. Complaint ¶ 13. (The Court assumes that Elise's parents made this request to the District, but the complaint does not so specify.) Elise's parents also requested that the IEP designate Elise as a student with serious emotional disturbance. *Id.*

In January 1998, Elise's parents retained attorney Thomas E. Beltran to assist them in obtaining a free and appropriate education ("FAPE") for Elise. Complaint ¶ 14. Mr. Beltran brought on Margaret S. Oppel as co-counsel. *Id.* Mr. Beltran and Ms. Oppel reviewed the files, consulted with psychologists, prepared for the filing of a request for Due Process Hearing, negotiated with the District and represented the Ostbys at IEP meetings between April and June 1998. *Id.*

Between January and June 1998, Elise was hospitalized several times. Her treating psychiatrist recommended that she be placed in a residential treatment program. Instead, the District provided her with schooling and mental health services through a local mental health support program and a special day class for students with serious emotional programs. These programs were not successful. Complaint ¶ 15. At this point, the Ostbys unilaterally decided to place Elise at Provo Canyon School, and paid for her tuition and transportation costs themselves. Complaint ¶ 16.

On August 9, 1998, Mr. Beltran and Ms. Oppel filed a formal request for a Due Process Hearing under 20 U.S.C. § 1415(f). Complaint ¶ 17. The Ostbys sought prospective payment by the District for Elise's placement at Provo Canyon School, retroactive payment for the costs of her attendance there since June 1998, payment for the costs of their travel to and from the school, including the costs of their originally locating and visiting the school and continued payment for their transportation to visit her and to bring her home for periodic visits. *Id.*

A Due Process Hearing was scheduled for October 29 and 30, 1998, pursuant to the IDEA, 20 U.S.C. § 1415(f). Complaint ¶ 18. A mediation was scheduled for September 28, 1998, pursuant to the IDEA, 20 U.S.C. § 1415(e). At the mediation, the Ostbys and the District entered into a Final Mediation Agreement ("Agreement") under which the District agreed to pay for the retroactive and prospective costs of Elise's placement at the Provo Canyon School, including the costs of travel to and from the school for initial placement and visitation. VCBH agreed to pay the established mental health rate for Provo Canyon school and to authorize Social Services to pay for Elise's room and board there from June 29, 1998 onward. Complaint ¶ 20. The Agreement was in writing, was signed by the parties and by the mediation officer assigned to the case and was filed with the Special Education Hearing Office. *Id.*

The parties agreed that the issue of attorney's fees was not resolved, and that the Ostbys would submit to the District an

itemized statement of attorney's fees and costs. *Id.* The District agreed to respond to the Ostbys' itemized statement within twenty days after receiving it. *Id.* The Ostbys soon provided the District with an invoice for attorney's fees and costs in the amount of $39,418.09. The District responded with an offer to pay approximately $15,000. Complaint ¶ 21.

Apparently, the Ostbys did not accept the District's offer. On September 27, 2001, the Ostbys filed suit for attorney's fees and costs under the IDEA. The District now moves for judgment on the pleadings on the grounds that: (1) the Ostbys are not entitled to fees because they are not "prevailing parties" within the meaning of the attorney's fees provision of the IDEA; and (2) the Ostbys' suit is barred by the statute of limitations. The Court concludes that neither of these arguments has merit, and accordingly DENIES Defendant's motion.

### III.

### DISCUSSION

#### A. Standards Governing Motion for Judgment on the Pleadings

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed.R.Civ.P. 12(c). A judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Westlands Water District v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993). When determining a motion for judgment on the pleadings, the Court should assume the allegations in the Complaint to be true and construe them in the light most favorable to the plaintiff, and the movant must clearly establish that no material issue of fact remains to be resolved. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir.1988). However, "conclusory allega-

tions without more are insufficient to defeat a motion [for judgment on the pleadings]." *Id.*

#### B. The Ostbys are the "Prevailing Party" Within the Meaning of the IDEA's Attorney's Fees Provision

The IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). The "IDEA guarantees parents of disabled children considerable and detailed procedural rights. Parents are entitled to an opportunity to participate in the identification, evaluation, and placement process." *Johnson v. District of Columbia*, 190 F.Supp.2d 34, 39–40 (D.D.C.2002) (citing 20 U.S.C. §§ 1414(f), 1415(b)(1)).

"Included in this right to participate is the right to file complaints. IDEA gives parents an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of this child, or the provision of a free appropriate public education to such child." *Id.* (citing § 1415(b)(6)). "Parents who file such complaints are entitled to an 'impartial due process hearing.'" *Id.* (quoting 20 U.S.C. §§ 1415(f)(1)). At the due process hearing, the IDEA guarantees parents the right to be "accompanied and advised by counsel", as well as "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." *Id.* (citing 20 U.S.C. § 1415(h)). "Parents 'aggrieved by' a hearing officer's findings and decision may bring a civil action in either state or federal court without regard to the amount in controversy." *Id.* (quoting 20 U.S.C. § 1415(i)(2)). "Furthermore,

[the] IDEA provides for attorney's fees: 'In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.'" *Id.* (quoting 20 U.S.C. § 1415(i)(3)(B)).

The District argues that after the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), the Ostbys are not the "prevailing party" within the meaning of the IDEA's attorney's fees statute.

In *Buckhannon,* the Court held that the term "prevailing party," as used in various federal fee-shifting statutes, requires a "material alteration of the legal relationship of the parties." *Id.* at 604, 121 S.Ct. 1835; *see also Bennett v. Yoshina,* 259 F.3d 1097, 1099 (9th Cir.2001) (explaining the holding of *Buckhannon* ). The Court concluded that a plaintiff does not "prevail" within the meaning of the fee-shifting statutes if he or she was merely a "catalyst" for some voluntary change on the part of the defendant because the plaintiff had not obtained a "judicially sanctioned change in the parties' legal relationship." *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835.

In *Bennett,* the state of Hawaii held an election to decide whether to hold a constitutional convention. 259 F.3d at 1099. The election was very close, and Hawaii's Supreme Court was required to interpret the effect of a number of blank ballots. The Hawaii Supreme Court decided the question in a way that gave the victory to those opposing a constitutional convention. *Id.* A group in favor of the constitutional convention brought suit in district court, arguing that the decision of the Hawaii Supreme Court violated the constitution. *Id.* The district court agreed and ordered a

special election, but the Ninth Circuit issued a stay of this order, and ultimately reversed the district court's decision.

After the Ninth Circuit issued the stay, the Hawaii Legislature voluntarily passed a bill providing for a second vote on the constitutional convention question. *Id.* at 1100. Passage of the bill mooted the lawsuit, which was still pending before the appeals court on plaintiffs' motions for rehearing and rehearing en banc. *Id.* Plaintiffs moved for attorney's fees under 42 U.S.C. § 1988 (the Civil Rights Attorney's Fees Awards Act of 1976) on the theory that their lawsuit had been a catalyst in the Hawaii Legislature's passage of the bill to require a second election.

Applying *Buckhannon,* the Ninth Circuit held that the plaintiffs were not the "prevailing party" within the meaning of § 1988 because they had not obtained a "material alteration of the legal relationship of the parties" in their favor. *Id.* at 1101 (citing *Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835). At best, the plaintiffs had merely served as a "catalyst" in the Hawaii Legislature's otherwise voluntary decision to require a second election. Moreover, the court noted that the plaintiffs had suffered a "complete defeat" on the merits of their lawsuit. *Id.* Therefore, the plaintiffs were not entitled to attorney's fees under the fee-shifting statute.

In contrast to *Bennett* is *Barrios v. California Interscholastic Federation,* 277 F.3d 1128 (9th Cir.2002). Barrios, a handicapped assistant baseball coach for a public high school, was repeatedly prohibited by umpires from coaching on the field because he used a wheelchair. *Id.* at 1131–32. He obtained the assistance of several lawyers, who wrote demand letters to the California Interscholastic Federation ("CIF") and eventually filed a complaint and application for a temporary restraining order. After Barrios filed the

complaint, the parties entered into a settlement agreement, under which Barrios was permitted to coach on the field in his wheelchair and the defendants agreed to pay Barrios $10,000 in compensatory damages. *Id.* at 1133. The agreement expressly reserved the question of attorney's fees for determination by the court. *Id.* Barrios then filed a motion for attorney's fees and costs under the fee-shifting provision of the Americans with Disabilities Act ("ADA"), which specifically permits the "prevailing party" to seek attorney's fees and costs. *Id.* at 1133–34 (citing 42 U.S.C. §§ 12205).

The Ninth Circuit held that Barrios was the "prevailing party" because he entered into a legally enforceable settlement agreement against the CIF. *Id.* at 1134. The court explained that " 'a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.' " *Id.* (quoting *Fischer v. SJB P.D. Inc.,* 214 F.3d 1115, 1118 (9th Cir.2000)) (internal quotation marks omitted). Under Ninth Circuit precedent, " 'a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, ***or settlement against the defendant.'*** In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do." *Id.* (quoting *Fischer,* 214 F.3d at 1118 (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992))) (emphasis added). Therefore, because Barrios could enforce his private settlement in court, he was entitled to attorney's fees under the ADA. *Id.*

In a footnote, the Ninth Circuit in *Barrios* held that its conclusion was "unaffected" by *Buckhannon* because Barrios did "not claim to be a 'prevailing party' simply by virtue of his being a catalyst of policy change; rather, his settlement agreement affords him a legally enforceable instrument, which under *Fischer,* makes him a 'prevailing party.' " *Id.* at 1134 n. 5. The Ninth Circuit noted the "dictum" in *Buckhannon* "suggest[ing] that a plaintiff 'prevails' only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree." *Id.* (citing *Buckhannon,* 121 S.Ct. at 1840 n. 7). The Ninth Circuit rejected this dictum, however, because "it runs contrary to this court's holding in *Fischer,* by which we are bound." *Id.*[2]

About a week after the Ninth Circuit decided *Barrios,* the Second Circuit reached an opposite conclusion in *J.C. v. Regional Sch. Dist. 10, Bd. of Educ.,* 278 F.3d 119 (2d Cir.2002). In *J.C.,* parents of a disabled child attempted to obtain special education for their child under the IDEA. *Id.* at 121–22. The school decline to provided special services to the child. *Id.* at 122. After the child was suspended from school for allegedly vandalizing a bus, the parents, through their attorney, sent a letter to the school board ("Board") requesting relief under the IDEA, including a planning and placement team ("PPT") and a due process hearing. *Id.* They also requested that the Board fund an independent evaluation of their child, determine his eligibility for special education and permit him to return to school. *Id.*

The Board scheduled a PPT meeting and agreed to order an independent psychological evaluation for the child. *Id.* Eventually, the Board determined that the

---

**2.** The court also noted that the settlement agreement expressly reserved the question of attorney's fees to the court, "thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs." *Barrios,* 277 F.3d at 1134 n. 5.

child suffered an educational disability, and terminated the expulsion proceedings against him. In addition, the PPT drafted an IEP and provided all other relief that the parents had requested. *Id.* The parties agreed that no issues remained to be resolved, and held a hearing solely for purposes of adopting the PPT's results as an official decision and order. *Id.* At the hearing, however, the Board "changed its mind, fearing that transforming the results of the PPT into an official decision would expose the Board to liability for attorneys' fees." *Id.* The hearing officer therefore declined to adopt the PPT's results as an "official order," and issued a final written decision dismissing the hearing as moot. *Id.*

The parents then sought attorney's fees from the Board on the ground that their child was the "prevailing party" within the meaning of the IDEA because he had received all requested relief. The Board refused to pay fees, and the parents brought suit for fees and costs under the IDEA.

The Second Circuit observed that "the IDEA authorizes the award of reasonable attorneys' fees to the parents of a child with a disability who is the prevailing party." *Id.* at 123 (citing 20 U.S.C. § 1415(i)(3)(B)). The court then observed that although *Buckhannon* dealt with the fee-shifting provisions of the ADA and the Fair Housing Amendments Act of 1988 ("FHAA"), "the decision expressly signaled its wider applicability." *Id.* Specifically, the term "prevailing party" should be consistently interpreted "under any given fee-shifting statute ... 'in which Congress has authorized an award of fees to a prevailing party.'" *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Moreover, the court observed, "the IDEA's legislative

history demonstrates that Congress intended the term 'prevailing party' to be construed consistently under the IDEA and other fee-shifting statutes." *Id.* at 123–24 (citing legislative history). The Second Circuit therefore concluded that the holding in *Buckhannon* applied to the IDEA's fee-shifting provision. *Id.* at 124; *but see Johnson,* 190 F.Supp.2d at 45 (holding in *Buckhannon* does not apply in the context of the IDEA because to do so would undermine the purposes of the IDEA, in particular by forcing parents who cannot afford legal representation to choose "between legal representation and their child's interests in an expeditious settlement").

Applying *Buckhannon,* the Second Circuit then proceeded to conclude that the plaintiffs were not entitled to attorney's fees because they had not obtained a "judicially sanctioned" change in the parties' legal relationship. *Id.* at 125. The plaintiffs argued that "the IEP is more of a judicial consent decree than a private settlement ... because it is required by statute for all disabled children and because it is legally binding on the school board." *Id.* The court disagreed, however, because the fact that the IEP "is required by statute only distinguishes it further from a judicial order or decree." *Id.*[3]

Thus, in the Ninth Circuit, unlike in the Second Circuit, a plaintiff who obtains a private settlement against a defendant is a "prevailing party" for purposes of federal fee-shifting statutes. *Barrios,* 277 F.3d at 1134; *see also Johnson,* 190 F.Supp.2d at 44 ("The holding of *Buckhannon* does not preclude an award of fees to plaintiffs who settle IDEA claims during either administrative or judicial proceedings."). Even though *Barrios* involved the ADA's fee-shifting provision, its holding almost cer-

---

**3.** One district court in the District of Columbia has followed *J.C.,* but did so with great reservations. *See Akinseye v. Dist. of Columbia,* 193 F.Supp.2d 134, 139 (D.D.C.2002).

tainly applies to the IDEA's fee shifting provision as well. *Bennett,* 259 F.3d 1097 (Supreme Court has interpreted Congress's various fee-shifting provisions consistently); *J.C.,* 278 F.3d at 123–24 (same).

Here, assuming the allegations in the complaint to be true, the Osbtys are the "prevailing party" for purposes of the IDEA's fee-shifting statute because, as in *Barrios,* they obtained a private settlement against the District that is legally enforceable in court. This case is unlike *Bennett,* where the plaintiffs did not obtain a settlement, and the only theory they asserted in support of attorney's fees was that they had been a "catalyst" in the legislature's decision to hold a new election. The Ostbys are not proceeding solely on a catalyst theory. As in *Barrios,* the Ostbys obtained "a legally enforceable instrument" against the District. Therefore, Defendant's motion for judgment on the pleadings on the ground that Plaintiffs are not a "prevailing party" is DENIED.[4]

### C. Statute of Limitations

■ The District also moves for judgment on the pleadings on the ground that Plaintiffs' suit for attorney's fees is barred by the statute of limitations. The District contends, and the Plaintiffs do not dispute, that the cause of action for attorney's fees accrued on September 28, 1998, when the underlying due process hearing was concluded by way of dismissal after a settlement was reached. Plaintiffs filed their complaint on September 27, 2001, a day short of three years after Defendant claims the limitations period began. Plaintiffs contend that the applicable limitations period is three years. Defendant contends that the applicable limitations period is

ninety days. For the following reasons, the Court agrees with the Plaintiffs that the limitations period is three years.

The IDEA specifies no limitations period governing a plaintiff's suit for attorney's fees. *See* 20 U.S.C. § 1415(i)(3)(B); *Zipperer v. Sch. Bd. Of Seminole County,* 111 F.3d 847, 850 (11th Cir.1997); *Powers v. Indiana Dep't of Educ.,* 61 F.3d 552, 554 (7th Cir.1995). Therefore, we "must determine the most closely analogous state statute of limitations" and apply that statute "unless it would undermine the policies underlying the IDEA." *Livingston Sch. Dist. Nos. 4 & 1 v. Keenan,* 82 F.3d 912, 915 (9th Cir.1996). "In order to assess which state statute of limitations is most analogous, the court 'must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle.'" *S.V. v. Sherwood School Dist.,* 254 F.3d 877, 879 (9th Cir.2001) (quoting *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)).

The issue of which California statute of limitations applies to an action for attorney's fees under the IDEA has not yet been addressed by the Ninth Circuit. In *Powers,* the Seventh Circuit addressed this precise question in the context of an IDEA case that arose in Indiana. In attempting to characterize the "essence of the claim" for fees under the IDEA, the court noted the "unique problem in that it that it may arguably be characterized as either an independent cause of action under § 1415(e)(4)(B), or as ancillary to the judicial review of the administrative decision on educational placement. In other words, the attorneys' fees claim could simply be

---

**4.** Plaintiffs also argue that because the Agreement itself provides (explicitly or implicitly) that Plaintiffs are entitled to recover fees and costs, the District only reserved the right to argue about the *amount* of fees and costs, and waived the right to contest the very award of

such fees. Because the Court concludes that Plaintiffs are the "prevailing party" for purposes of the IDEA's fee-shifting statute, it does not reach whether the District waived the right to argue that Plaintiffs are not entitled to fees.

considered an independent claim for money damages or it could be seen as just one part of the underlying dispute over the child's educational placement or educational plan." *Powers,* 61 F.3d at 555 (citations omitted).

If a claim for attorney's fees is considered an independent claim, it "is arguably analogous to a tort action seeking money damages, which usually carries a comparatively long statute of limitations." *Id.* (citations omitted). "If viewed as part of the administrative review of the underlying education dispute, however, the claim for attorneys' fees is more analogous to statutes dealing with judicial review of state agency decisions. The limitations period for such agency review is generally quite short." *Id.* (citation omitted).

The Seventh Circuit ultimately concluded that a claim for attorney's fees under the IDEA is ancillary to the underlying education dispute, and it applied the thirty-day Indiana state law limitations period governing judicial review of an administrative decision in a special education matter. *Id.* at 556–57. The court reasoned that it was more appropriate to apply a shorter limitations period because " '[i]n awarding attorneys' fees, the district court must review not only proceedings in its own court but also proceedings in a state administrative environment,' and that a return to such a 'quagmire months after adjudication of the merits would result in a needless expenditure of judicial energy.' " *Id.* at 556 (quoting *Dell v. Bd. Of Educ., Township High Sch. Dist.,* 32 F.3d 1053, 1063 (7th Cir.1994)). In addition, "although the promptness of a decision on attorneys' fees is not as important as a quick decision in questions of educational placement, 'both the school district and the parents still have an interest'—along with the attorney—in the expeditious resolution of this matter." *Id.* (quoting *Dell,* 32 F.3d at 1063).

In *Zipperer,* the Eleventh Circuit rejected the Seventh Circuit's reasoning, and, in accord with decisions of four district courts around the country, decided instead to apply a longer limitations period to a claim for attorney's fees under the IDEA. *Zipperer,* 111 F.3d at 851. The court observed that under the IDEA's statutory scheme, an action for attorney's fees is explicitly distinct from the administrative review process, and therefore could not be considered ancillary to that process. *Id.* (comparing 20 U.S.C. § 1415(e)(2), which provides for the appeal of an administrative decision, with 20 U.S.C. § 1415(e)(4)(B), which creates an independent cause of action for attorney's fees). In support of its ruling that a claim for attorney's fees under the IDEA is an independent claim, the court observed that the administrative agency has no jurisdiction to award attorney's fees, and therefore that there is no such thing as an action for review of an agency decision regarding fees. Instead, a party is required originally to file a claim for fees in the district court. *Id.* For these reasons, the Eleventh Circuit concluded that a claim for attorney's fees is more analogous to an independent action predicated on statutory liability than an appeal of an agency decision. Accordingly, it applied Florida's four-year statute of limitations that governs actions predicated on statutory liability rather than the thirty-day limitations period for appeals from administrative hearings. *Id.* at 850, 851.

The *Zipperer* court addressed "whether adoption of a four-year statute of limitations is inconsistent with the policies of the IDEA." *Id.* at 851. It "acknowledge[d] that a short period of limitations for claims brought pursuant to section 1415(e)(2) assure[s] prompt resolution of disputes over education plans for [disabled] children." *Id.* (citation and internal quotation marks omitted). "Nonetheless," the court reasoned, "the resolution of claims for attor-

neys' fees is less urgent and, in reality, is more likely to be resolved by the attorneys' interest in prompt payment than by a short period of limitations. A four-year period of limitations, like the award of attorneys' fees to parents who are prevailing parties, is likely to encourage the involvement of parents, as represented by attorneys, in securing appropriate public educations for their children. We conclude that the application of a four-year statute of limitations to claims for attorneys' fees under the IDEA is consistent with the policies of the federal statute." *Id.* at 851–52.

More recently, in a divided opinion, the Sixth Circuit joined the Seventh Circuit in concluding that a claim for attorney's fees under the IDEA is ancillary to the administrative proceedings, and therefore the most analogous state limitations period is that governing review of agency decisions. *King v. Floyd County Bd. of Educ.,* 228 F.3d 622, 625–26 (6th Cir.2000) (applying Kentucky's thirty-day limitations period governing review of agency decisions to attorney's fees case under the IDEA).

Although the Ninth Circuit has not yet ruled on the precise question presented in this case, it has ruled on a similar question in an IDEA case. In *Dreher v. Amphitheater Unified Sch. Dist.,* 22 F.3d 228 (9th Cir.1994), the court had to determine the limitations period that applies to a court action challenging a school district's refusal to grant parents a due process hearing to determine financial responsibility for their disabled child's speech therapy at a private school. *Id.* at 231. Because the IDEA did not specify a limitations period for such actions, the Ninth Circuit turned to Arizona law to find the most closely analogous limitations period. *Id.* The school district urged the court to apply the thirty-five-day limitations period that applied to judicial review of administrative decisions, while the parents urged the

court to apply the one-year limitations period that applied to "liabilities created by statute." *Id.* at 232.

The Ninth Circuit decided to apply to one-year limitations period. First, it observed that the parents were not granted a due process hearing, "so their action is not analogous to an appeal of a final administrative decision." *Id.* Second, "a longer statute of limitations in this case is consistent with federal policies." *Id.* Although Congress desired swift resolution of administrative decisions so that a child's education is not in flux, "Kristy's education is not threatened by the duration of this claim for reimbursement, and the federal policy requiring swift resolution does not apply." *Id.*

The Court finds the reasoning of *Dreher* to be persuasive here. As in *Dreher,* Elise's education was not and is not threatened by the duration of this claim for attorney's fees, and the federal policy requiring swift resolution does not apply. Moreover, if the Ninth Circuit found that the action in *Dreher*—a challenge to a refusal to provide a due process hearing—was not analogous to judicial review of an administrative decision, then the Ninth Circuit probably would also find that an action for attorney's fees—over which an administrative agency has no jurisdiction—is also not analogous to review of an administrative decision.

In addition, applying a longer limitations period to a claim for attorney's fees promotes the policy embodied in the IDEA of protecting the parents' right to be represented by counsel in seeking an appropriate education for their child. *See* 20 U.S.C. § 1415(h) (guaranteeing parents the right to be "accompanied and advised by counsel", as well as "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses.").

For these reasons, the Court declines to apply the ninety-day limitations period ap-

plicable under California law to judicial review of administrative decisions in special education matters, Cal. Educ.Code § 56505(i),[5] and instead, as in *Zipperer*, applies the three-year limitations period applicable under California law to actions for liability created by statute, Cal.Code Civ. P. § 338(a).[6] This result is consistent both with the reasoning in *Dreher* and with the policies embodied in the IDEA. Plaintiffs have brought their action for attorneys fees within three years of the parties' agreement to settle this action. Therefore, their action is timely.

## IV.

## CONCLUSION

Good cause appearing therefor, Defendant's motion for judgment on the pleadings[7] is DENIED.

IT IS SO ORDERED.

---

**5.** This section provides, in relevant part: "Nothing in this chapter shall preclude a party from exercising the right to appeal the decision to a court of competent jurisdiction. An appeal shall be made within 90 days of receipt of the hearing decision." Cal. Educ. Code § 56505(i).

**6.** This section provides that the time for commencing an action "upon a liability created by statute, other than a penalty or forfeiture," is three years. Cal.Code Civ. P. 338(a).

**7.** Docket number 12.