Jane DOE, Plaintiff,

v.

**BOSTON PUBLIC SCHOOLS,
Defendant.**

No. CIV.A. 03–10404–WGY.

United States District Court,
D. Massachusetts.

May 20, 2003.

Richard Ames, S. Stephen Rosenfeld, Rosenfeld & Rafik, P.C., Boston, MA, for Jane Doe (Plaintiff).

Peter M. Kelley, Boston Public Schools, Boston, MA, Alissa Ocasio, Office of the Legal Advisor, Boston, MA, for Boston Public Schools (Defendant).

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

The instant motion to dismiss presents a single issue: whether the Supreme Court's decision in *Buckhannon Board and Care Home Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which was decided in the context of claims brought under the Fair Housing Amendments Act, 42 U.S.C. § 3601 *et. seq.*, and the Americans With Disabilities Act, 42 U.S.C. § 12101 *et. seq.*, also applies to claims brought under the Individuals with Disabilities Act (the "IDEA"), 20 U.S.C. § 1400 *et. seq.* If Buckhannon does apply to the IDEA, then only IDEA plaintiffs achieving a judicially-sanctioned change are entitled to attorneys' fees.

The First Circuit explicitly left this question open in *Maine School Administrative District No. 35 v. Mr. and Mrs. R.*, noting that the instant appeal did not require its resolution. 321 F.3d 9, 15 n. 4 (1st Cir.2003). The two circuits that have considered the issue—the Second and Third Circuits—have both held that *Buckhannon* is indeed applicable to IDEA cases. *See J.C. v. Reg. Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119 (2d Cir.2002); *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545 (3rd Cir. 2003). The defendant, Boston Public Schools, urges this Court to follow their reasoning and dismiss the claim of the plaintiff, Jane Doe ("Doe"), for attorneys' fees.

## I. INTRODUCTION

### A. Facts

The following facts are drawn from Doe's complaint. Doe is an eighteen-year-old woman with a severe psychiatric disability. Compl. ¶¶ 4, 9. From November 27, 2001 to February 19, 2002, Doe was hospitalized in a psychiatric unit at the St. Elizabeth's Medical Center. *Id.* ¶ 6. On December 11, 2001, Doe's father wrote to the Boston Public Schools, informing them that the Department of Mental Health had evaluated Doe and recommended her placement in a residential program called the Lighthouse Program at the Children's Collaborative ("Lighthouse"). *Id.* ¶ 7.

On January 31, 2002, the Boston Public Schools held a team meeting about Doe's situation. There, they rejected Doe's father's request that Boston Public Schools pay for Doe's placement at the Lighthouse and instead proposed an Individualized Education Plan ("IEP") for Doe at the McKinley Vocational High School, a public high school operated by Boston Public Schools. *Id.* ¶ 8. On February 7, 2002, Doe, acting through her father, rejected this offer. *Id.* ¶ 13.

For the next eight months—between February 7, 2002 and October 9, 2002—the dispute continued between Doe and the Boston Public Schools. On February 19, 2002, Doe was discharged from the hospital and sent to the Lighthouse program, which is funded by the Department of Mental Health. *Id.* ¶ 16. On July 2, 2002, the parties participated in an unsuccessful mediation conducted by the Bureau of Spe-

cial Education Appeals (the "Bureau"). *Id.* ¶ 18. On July 22, 2002, Doe filed a formal request for a hearing at the Bureau. *Id.* ¶ 19. After several postponements and a pre-hearing conference at which the dispute was continued, the hearing ultimately was set for October 9–11, 2002. *Id.* ¶ 32.

Approximately five minutes before the hearing was scheduled to begin on October 9, the lawyer for the Boston Public Schools informed Doe's counsel that Boston Public Schools had decided to settle the dispute by supporting a private educational day placement for Doe—precisely what Doe had been seeking throughout this process. *Id.* ¶ 38–41. Doe accepted this offer by signing the new IEP document containing this offer in front of the Hearing Officer. *Id.* ¶ 42. Doe subsequently filed a motion for the Hearing Officer to read the new IEP into the record; the Hearing Officer declined, noting that "the general [Bureau] practice has been for the Hearing Officer to decline to endorse or otherwise affirm parties' private settlement agreements by reading them into the record." *Id.* ¶ 45 and Ex. A (Bureau Ruling) at 10.

### B. Procedural Posture

Doe subsequently filed the instant complaint in this Court, seeking attorneys' fees. Doe argues that the IDEA provides for attorneys' fees for prevailing parties and that she—by reason of the settlement providing her with her requested placement in a private therapeutic school—is a prevailing party. Boston Public Schools has moved to dismiss on grounds that the Supreme Court's *Buckhannon* limitation regarding who qualifies as a prevailing party should be applied to IDEA cases and that, under this definition, Doe is not a prevailing party and thus not entitled to attorneys' fees.

## II. DISCUSSION

### A. The Supreme Court's *Buckhannon* Decision

Numerous civil rights statutes—including the IDEA—provide that a "prevailing party" is entitled to an award of attorneys' fees. Prior to the Supreme Court's *Buckhannon* decision in 2001, "prevailing parties" included parties who secured a judgment on the merits, parties who obtained a court-ordered settlement decree, and—in most circuits, including the First Circuit [1] —parties who "achieve[d] the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," pursuant to the so-called "catalyst theory." *Buckhannon*, 532 U.S. at 601–02, 121 S.Ct. 1835.

In *Buckhannon*, a case that arose under the fee-shifting provisions of the Fair Housing Amendments Act (the "FHAA") and the Americans with Disabilities Act (the "ADA"), both of which include language awarding attorneys' fees to "prevailing parties," the Supreme Court rejected the catalyst theory. The Court explained:

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.

*Id.* at 605, 121 S.Ct. 1835. By contrast, the Court explained that a judgment on the merits or a court-ordered consent decree does "create the 'material alteration of the legal relationship of the parties'

---

1. *See, e.g., Stanton v. Southern Berkshire Reg.*    *Sch. Dist.,* 197 F.3d 574, 577 (1st Cir.1999).

necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835.

The Court based its rejection of the catalyst theory on several factors. It noted the baseline American rule that each party should pay its own fees and the "general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Id.* at 602, 121 S.Ct. 1835 (internal citations and quotation marks omitted). The Court then stated that the legislative history was ambiguous as to whether Congress intended fee awards pursuant to the "catalyst theory." *Id.* at 607–08, 121 S.Ct. 1835. The Court also noted that in using the term "prevailing party," Congress had employed a "legal term of art" that was defined, in Black's Law Dictionary, as a "party in whose favor a judgment is rendered." *Id.* at 603, 121 S.Ct. 1835. Finally, the Court stated that "a request for attorney's fees should not result in a second major litigation," which would often result from the catalyst theory, given that "a 'catalyst theory' hearing would require analysis of the defendant's subjective motivations in changing its conduct . . . ." *Id.* at 609, 121 S.Ct. 1835 (internal citations and quotation marks omitted).

*Buckhannon* was, as noted above, decided in the context of the FHAA and the ADA, and questions have arisen as to its reach. *Buckhannon* itself used broad language indicating wide applicability. For example, in framing the issue addressed by its opinion, the Court did not single out the ADA and the FHAA but instead stated broadly:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because

the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.

*Id.* at 600, 121 S.Ct. 1835.

The Court also noted that Congress "has authorized the award of attorney's fees to the 'prevailing party' in numerous statutes in addition to those at issue, such as the Civil Rights Act of 1964, 78 Stat. 259, 42 U.S.C. § 2000e-5(k), the Voting Rights Act Amendments of 1975, 89 Stat. 402, 42 U.S.C. § 19731(e), and the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C § 1988," and stated that "we have interpreted these fee-shifting provisions consistently . . . ." *Id.* at 602–603, n. 4, 121 S.Ct. 1835. This statement echoed the Court's previous statement in a case arising under Section 1988 that the standards it set forth for interpreting the term "prevailing party" would be "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Indeed, in *Buckhannon* itself, the Court—in assessing whether the legislative history supported the catalyst theory—examined not the legislative history of the Fair Housing Amendments Act and the Americans with Disabilities Act, but rather the legislative history of Section 1988. *Buckhannon,* 532 U.S. at 607–08, 121 S.Ct. 1835.

Accordingly, in a recent First Circuit case involving attorneys' fees under Section 1988, *New England Regional Council of Carpenters v. Kinton,* 284 F.3d 9 (1st Cir.2002), the court did not even consider the possibility that *Buckhannon* might be limited solely to the contexts of the Americans with Disabilities Act and the Fair Housing Amendments Act. Instead, the court simply noted that the plaintiff had "relied on the so-called catalyst theory to support this claim [for attorneys' fees.]

The Supreme Court thwarted that initiative when it recently consigned the catalyst theory to the scrap heap." *Id.* at 30 (internal citations omitted). Other courts have similarly held *Buckhannon* applicable to a variety of statutes authorizing attorneys' fees for "prevailing parties" or for parties who have "substantially prevailed." *See, e.g., Oil, Chem. and Atomic Workers Int'l Union, AFL–CIO v. Department of Energy*, 288 F.3d 452, 455 (D.C.Cir.2002) (holding *Buckhannon* applicable to the Freedom of Information Act, 5 U.S.C. § 552 *et. seq.*, which provides attorneys' fees for complainants who have "substantially prevailed"); *Perez–Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir.2002) (holding *Buckhannon* applicable to the Equal Access to Justice Act, 28 U.S.C. § 2412 *et. seq.*, which authorizes attorneys' fees for prevailing parties); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 667 (7th Cir.2001) (holding *Buckhannon* applicable to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.*, which authorizes attorneys' fees for prevailing parties).

That being said, the First Circuit has not specifically addressed whether *Buckhannon* applies to the IDEA, and the Supreme Court did not explicitly include the IDEA as one of its examples of civil rights statutes in which Congress has authorized the award of attorneys' fees to prevailing parties.[2] Indeed, as noted above, in *Maine School Administrative District No. 35 v. Mr. and Mrs. R*, the First Circuit stated that the instant appeal did not require it to determine whether *Buckhannon* applies to the IDEA and that "we therefore express no opinion as to whether the

*Buckhannon* rule applies in IDEA cases." 321 F.3d 9, 15 n. 4 (2003). This Court must decide, therefore, whether *Buckhannon* should indeed be held applicable to IDEA cases.

## B. *Buckhannon* As Applied to the IDEA

■ An assessment of whether Buckhannon applies to the IDEA must begin with a comparison between the IDEA's fee-shifting provision and those fee-shifting provisions in the other civil rights statutes to which *Buckhannon*, by its very terms, applies. As noted above, *Buckhannon* was decided in the context of the fee-shifting provisions of the FHAA and the ADA. These statutes have very short and simple fee-shifting provisions.

The FHAA's fee-shifting provision is as follows: "In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2)(2000).

The ADA's fee-shifting provision is as follows: "In an action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses and costs . . . ." 42 U.S.C. § 12205 (2000). The fee-shifting provisions of Section 1988, the Voting Rights Act Amendments, and the Civil Rights Act—the three statutes specifically listed in *Buckhannon*—are essentially identical to those cited above.[3]

---

**2.** It seems clear, however, that the Court's list of examples was not meant to be exhaustive; rather, the Court referred to "numerous" statutes, and it is likely that it listed three such statutes simply for illustrative purposes. Indeed, as noted above, courts have held *Buck-*

*hannon* applicable to statutes other than those explicitly identified in the decision itself.

**3.** Section 1988 states that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that

The IDEA's fee-shifting provision is somewhat more complex. It first includes a general statement that is essentially identical to those above: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B) (2000). It then, however, includes three specific further provisions.

First, the IDEA goes on to state that

attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure . . . .; (II) the offer is not accepted within 10 days; and (III) the court or administrative hearing officer finds that the relief finally obtained by the parent is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i)(I)-(III) (2000).

Second, the IDEA states that "attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e) of this section that is conducted prior to the filing of a complaint under subsection (b)(6) or (k) of this section." 20 U.S.C. § 1415(i)(3)(D)(ii) (2000).

Third, the IDEA states that "whenever the court finds that . . . the parent, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy, . . . the court shall reduce, accordingly, the amount of attorneys' fees awarded under this section." 20 U.S.C. § 1415(i)(3)(F) (2000). Conversely, that reduction "shall not apply in any action or proceeding if the Court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U.S.C. § 1415(i)(3)(G) (2000).

Doe argues that these latter provisions in the IDEA indicate, by implication, that the IDEA authorizes attorneys' fees for parties who succeed through settlements. With respect to subsection (D)(i), she notes that although it essentially mimics Federal Rule of Civil Procedure 68, it then uses the term "offer of settlement" instead of "offer of judgment" (the language used in Rule 68), thus implying that a party may prevail, and qualify for fees, by accepting the defendant's settlement. Pl.'s Opp'n [Docket No. 10] at 10–11. With respect to subsection D(ii), Doe interprets the prohibition against fee awards relating to certain types of mediations as implying that, in other mediations, attorneys' fees are avail-

---

in any action brought against a judicial officer for any act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction." 42 U.S.C. § 1988(b) (2000). The Voting Rights Act Amendments state that "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteen amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1973*l*(e) (2000). Finally, the Civil Rights Act states that "[i]n any action or administrative proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e–5(k) (2000).

able.[4] Finally, with respect to subsections F and G, Doe argues that the references to "final resolutions" encompass not only judgments on the merits and court-ordered consent decrees, but also settlement agreements. *Id.* at 12. She points to other statutes in which Congress has qualified the term "final resolution" and suggests that the absence of qualification here indicates an intent to allow attorneys' fees in such instances. *Id.* In addition, Doe makes the general argument that the IDEA's purpose and structure is to encourage settlement and to provide a "free and appropriate education" for students with disabilities. *Id.* at 13–14. She suggests that if attorneys' fees are not granted to plaintiffs such as herself, then they have not received the "free" education to which they are entitled.

Doe's arguments are not entirely lacking in support from the case law. One court in the Northern District of Illinois recently ruled that:

> This is a very close issue, one on which I may be wrong, but ... I believe there exist critical distinctions in the text and structure of the IDEA and the ADA and FHAA that persuade me that the Court's ruling in *Buckhannon* was not meant to extend to the IDEA and, accordingly, does not control the interpretation of the term "prevailing party" in the attorneys' fees provision of the IDEA.

*TD v. La Grange Sch. Dist. No. 102*, 222 F.Supp.2d 1062, 1065 (N.D.Ill.2002).

In addition, the Ninth Circuit has ruled that *Buckhannon* permits attorneys' fees for parties who have "prevailed" via settlement, even if that settlement is not in the form of a court-ordered consent decree. *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 n. 5 (9th Cir. 2002). The Ninth Circuit explained:

> [the plaintiff's] settlement agreement affords him a legally enforceable instrument, which under *Fischer* [a pre-*Buckhannon* Ninth Circuit case], makes him a "prevailing party." While dictum in *Buckhannon* suggests that a plaintiff 'prevails' only when he or she receives a favorable judgment on the merits or enters into a court-supervised consent decree, we are not bound by that dictum, particularly when it runs contrary to this court's holding in *Fischer*, by which we are bound.

*Id.* Pursuant to that holding, a district court in the Ninth Circuit recently held that an IDEA plaintiff who had settled (but not pursuant to a consent decree) was a prevailing party entitled to attorneys' fees. *Ostby v. Oxnard Union High,* 209 F.Supp.2d 1035, 1042 (C.D.Cal. 2002). A District of Columbia district court, finding the Ninth Circuit's interpretation persuasive, held likewise. *Johnson v. District of Columbia,* 190 F.Supp.2d 34, 44–45 (D.D.C.2002). In other words, the *Ostby* and *Johnson* courts assumed that *Buckhannon* applied to the IDEA, but interpreted *Buckhannon* itself to permit attorneys' fees to all parties achieving a settlement, whether court-ordered or not. Under that interpretation, of course, Doe would also be entitled to attorneys' fees, given that she did obtain a settlement.

---

4. Of course, in this case, the parties did not actually settle at a mediation; rather, mediation proved unsuccessful, a hearing was requested, and then Boston Public Schools offered to settle five minutes before the hearing commenced. Doe nonetheless argues that the IDEA's reference to mediations, and its implication that attorneys' fees might be available for them, suggests that attorneys' fees are more broadly available under the IDEA than under other statutes. *Id.* at 11.

The Ninth Circuit, however, is the only circuit that has adopted this narrow view of *Buckhannon*. This Court declines to adopt it here, given that it runs counter to the clear thrust of *Buckhannon*, as the Ninth Circuit itself acknowledged, and given that this interpretation does not seem to be shared by the First Circuit. *See, e.g., New England Reg. Council of Carpenters*, 284 F.3d at 30 ("The district court did not compel [the defendant] to adopt the regulations. Under the *Buckhannon* rule, that ends the matter. Because the district court entered no explicit order compelling, or even leading to, [the defendant's] adoption of the regulations, we cannot say that the district court's refusal to award attorneys' fees constituted an abuse of discretion.").

Given this Court's interpretation of *Buckhannon* to mean that only parties securing a judicially sanctioned change, that is, a judgment on the merits or a court-ordered consent decree, qualify as prevailing parties, the sole issue here is whether *Buckhannon* applies to the IDEA. If so, Doe's claim for attorneys' fees must be dismissed.

After careful consideration, the Court agrees with the majority of courts that have answered this question in the affirmative. *See, e.g., J.C.*, 278 F.3d at 124–25; *John T.*, 318 F.3d at 557–58; *Matthew V. ex rel. Craig V. v. Dekalb County School System*, 244 F.Supp.2d 1331, 1340–43 (N.D.Ga.2003); *Akinseye v. District of Columbia*, 193 F.Supp.2d 134, 140 (D.D.C. 2002); *Brandon K. v. New Lenox Sch. Dist.*, No. 01 C 4625, 2001 WL 1491499, at *2 (N.D.Ill. Nov.23, 2001); *April M. v. West Boylston Public Sch.* (D.Mass. August 15, 2001) (Swartwood, M.J.) (unpublished memorandum and order) (attached to Def.'s Mem. as Ex. A); *see also* Mark C. Weber, *Special Education Attorneys' Fees After Buckhannon Board & Care Home,*

*Inc. v. West Virginia Department of Health and Human Resources*, 2002 BYU Educ. & L.J. 273, 282, 289 (noting that the *Buckhannon* Court's language "suggests a much broader application of the case" and stating that "[t]he courts may not apply *Buckhannon* to special education litigation fee awards, but there is a clear likelihood that they will.").

The Supreme Court's language in *Buckhannon* was strong and broad in tone, emphatically rejecting the catalyst theory for a number of reasons. All of those reasons—namely, the baseline "American Rule" against fee-shifting in conjunction with the lack of clear congressional intent to depart from it pursuant to the catalyst theory; the Black's Law Dictionary definition of "prevailing parties"; and the desire to avoid a second major litigation—are generally applicable and not context or statute-specific.

█ Therefore, this Court interprets *Buckhannon* to mean that, unless Congress specifically and clearly indicates its approval of the catalyst theory in a given context, the catalyst theory should not be used to justify a fee recovery in statutes that generally provide fees to "prevailing parties." Moreover, although the IDEA's fee-shifting provision is somewhat more complex than those at issue in *Buckhannon*, it does *not* clearly and explicitly state that the catalyst theory is applicable here. That is, the IDEA never states that prevailing parties include those who have achieved their desired result through the other side's voluntary settlement. Doe has made some strong arguments for why the statutory text should be *interpreted* this way, but the text is simply not conclusive as to this point. Therefore, Doe cannot override the strong baseline presumption, articulated by *Buckhannon*, that the catalyst theory is no longer applicable here.

Not only is there a lack of clear congressional intent to endorse the catalyst theory in IDEA actions, but there is also affirmative support for the idea that the IDEA's fee-shifting provisions *should* be construed consistently with other fee-shifting provisions. As the Second Circuit noted in *J.C.*, the IDEA's legislative history suggests that Congress intended the IDEA's "prevailing party" language to be interpreted in a manner consistent with other fee-shifting statutes. 278 F.3d at 124. Most notably, the Senate Labor and Human Resources Committee stated, with reference to the fee-shifting provision for "prevailing parties," that (1) "The Committee believes that the substitute bill [that is, the bill that ultimately was enacted as the IDEA,] provides fee awards to handicapped children on a *basis similar to other fee shifting statutes* when securing the rights guaranteed to them"; and (2) "it is the committee's intent that the terms 'prevailing party' and 'reasonable' be construed consistently with the U.S. Supreme Court's decision in *Hensley v. Eckerhart.*"[5] S.Rep. No. 99–112 at 13 (1986), reprinted in 1986 U.S.C.C.A.N. 1798, 1803 (emphasis added).

In addition, the First Circuit has explicitly stated (albeit prior to *Buckhannon*) that in construing the IDEA's fee-shifting provisions, cases decided under "kindred federal fee-shifting statutes," such as Section 1988, furnish persuasive authority. *See State of New Hampshire v. Adams*, 159 F.3d 680, 684 (1st Cir.1998). This is particularly instructive because, as noted above, the *Buckhannon* decision rests in part on the Supreme Court's interpretation of Section 1988. Thus, the First Circuit's statement that the IDEA's attorneys' fees provisions should be interpreted in line with Section 1988 counsels in favor of *Buckhannon*'s application to the IDEA.

It is true that the above statements regarding consistency in interpretation between the IDEA's fee-shifting provision and the analogous provisions of other statutes, such as Section 1988, precede *Buckhannon*. For the reasons set forth above, however, this Court does not consider the differences between the fee-shifting provisions in the IDEA and the fee-shifting provisions in the other statutes to be sufficiently clear to warrant a reversal in this approach. Moreover, just three months ago in *Maine School Administrative District No. 35*, the First Circuit—while reserving the specific question of whether *Buckhannon* applies to the IDEA—reiterated that because the IDEA's fee-shifting provision "employs the phrase 'prevailing party'—a term of art—it must be interpreted and applied in the same manner as other federal fee-shifting statutes that use same phraseology." 321 F.3d at 14–15, n. 4.

Accordingly, this Court joins the numerous other courts that have ruled that *Buckhannon* is indeed applicable to the IDEA. As such, because Doe achieved only a private settlement that was not entered as an order, she does not satisfy *Buckhannon*'s definition of a "prevailing party" and cannot obtain attorneys' fees.

---

**5.** In *Hensley*, as noted above, the Court was addressing attorneys' fees under Section 1988; there, it stated that its interpretation would apply to all statutes awarding fees to "prevailing parties." 461 U.S. at 433 n. 7, 103 S.Ct. 1933. There is no question that *Buckhannon* now applies to Section 1988 given that *Buckhannon* explicitly referred to it and even relied on Section 1988's legislative history in determining whether attorneys' fees should be available under the Fair Housing Amendments Act and the Americans with Disabilities Act.

## III. CONCLUSION

For the foregoing reasoning, the Boston Public Schools' Motion to Dismiss [Docket No. 6] is ALLOWED.

SO ORDERED.