# United States Court of Appeals
## For the First Circuit

---

No. 03-1886

JANE DOE,

Plaintiff, Appellant,

v.

BOSTON PUBLIC SCHOOLS,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

---

S. Stephen Rosenfeld, with whom Richard Ames, Law Offices of Richard Ames, and Mala M. Rafik, were on brief for appellant.
Alissa Ocasio, with whom Merita Hopkins, was on brief for appellees.
Eileen L. Ordover, on brief for Center for Law and Education, amicus curiae.

---

February 6, 2004

---

**STAHL**, **Senior Circuit Judge**.  Plaintiff-appellant Jane Doe sued defendant-appellee City of Boston Public Schools ("Boston") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, et seq., seeking placement in a private therapeutic day school.  After negotiations, Boston offered Doe the placement she sought.  When Doe requested attorneys' fees, the district court dismissed her complaint on the ground that she was not a "prevailing party" within the meaning of Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598 (2001).  We affirm the district court's dismissal.

## I.  BACKGROUND

The facts of this case are not disputed.  Doe, a nineteen-year-old Boston resident, suffers from a severe mental disability.  Accordingly, she is entitled to special education services under the IDEA.  Pursuant to the IDEA, Boston was obligated to draft an Individualized Education Program ("IEP") for Doe and propose an appropriate placement.  20 U.S.C. §§ 1412(a)(4), 1415(b)(1), 1414(d).

Initially, Doe received an education at McKinley Vocational High School, a public school in Boston.  On December 11, 2001, while Doe was hospitalized, Doe's father requested that she be placed at the Department of Mental Health's ("DMH") Lighthouse program at the Children's Community Support Collaborative, a private residential school also located in Boston.  On January 31,

-2-

2002, in accordance with the statutory requirement, Doe and Boston conducted a Team Meeting to discuss her situation. Boston rejected Doe's request for the private placement and offered to continue her schooling at McKinley. Concerned that McKinley did not meet her needs, Doe reiterated her request to be placed in a twenty-four-hour residential program. Boston responded with an offer of providing educational services at McKinley and providing living services at another DMH facility. Doe rejected this proposal.

On July 2, 2002, the parties unsuccessfully attempted to mediate their disputes before the Bureau of Special Education Appeals ("BSEA"). See id. § 1415(e). On July 22, 2002, Doe filed for a hearing before the BSEA and requested placement at a small therapeutic day school. See id. § 1415(f). On August 14, 2002, the parties unsuccessfully attempted to reach an informal resolution at a pre-hearing conference.

The case was scheduled for a BSEA hearing on October 9, 2002. Just before the hearing was to begin, Boston presented to Doe an IEP that provided for placement at Bay Cove Academy, a private, therapeutic day-school program, for the current school year. Doe accepted the offer and requested that the placement be read into the record and signed by the BSEA hearing officer. The hearing officer declined, stating that it was against his usual practice.

On December 10, 2002, Doe filed a motion seeking to affirm the placement as a final judgment and to direct implementation of the agreed-upon IEP. On January 29, 2003, the hearing officer denied the motion, and on February 4, Doe's IDEA claims were dismissed.

On March 4, 2003, Doe filed a complaint in the district court seeking attorneys' fees. In a published opinion, the district court granted Boston's motion to dismiss the complaint. Doe v. Boston Pub. Schs., 264 F. Supp. 2d 65 (D. Mass. 2003). The court relied upon Buckhannon's definition of the term "prevailing party," in which the Supreme Court held that under certain federal fee-shifting statutes, attorneys' fees could be awarded only to parties who received a final judgment on the merits or obtained a court-ordered consent decree. Doe, 264 F. Supp. 2d at 67-71 (citing Buckhannon, 532 U.S. at 604-05). The district court found that Doe fit neither of the categories that would make her a "prevailing party," and was thus ineligible for fees under the fee-shifting provisions of the IDEA. Id. at 72.

## II. DISCUSSION

The central question we must decide is whether Buckhannon applies to the IDEA's definition of "prevailing party," thus precluding recovery of attorneys' fees following a private

settlement.[1]  This is a question of first impression in our circuit.  See Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R., 321 F.3d 9, 15 n.4 (1st Cir. 2003) (expressly leaving open the question of whether Buckhannon applies to the IDEA).  We review this question of law de novo.  Id. at 15; Domegan v. Ponte, 972 F.2d 401, 406 (1st Cir. 1992).

A.        The IDEA and HCPA

The IDEA was enacted in 1975 to ensure that disabled children could receive an appropriate education free of cost.  20 U.S.C. § 1400(d)(1)(A).[2]  It authorizes students and their parents to enforce this substantive right by filing suit against school departments.  Id. § 1415(b).  In Smith v. Robinson, 468 U.S. 992, 1014 (1984), the Supreme Court held that Congress had not intended to permit prevailing parties to recover attorneys' fees in IDEA

---

[1]Boston contends that its actions in this case -- specifically, presenting Doe with a signed IEP giving her the placement she sought -- did not constitute a true "private settlement agreement."  For purposes of this appeal, however, these actions have sufficient commonality with a more typical settlement involving a signed agreement resulting from negotiation.  Doe's result followed mediation and an informal conference.  It did not involve a ruling from the BSEA or any court or agency, or any other form of judicial or administrative involvement.  Doe succeeded in obtaining the specific benefit she sought, i.e., placement in a private therapeutic day school.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (to be a prevailing party, one must "succeed on any significant issue . . . which achieves some of the benefits plaintiffs sought in bringing suit.").  Accordingly, we treat the IEP placement as a settlement, and craft our holding today to apply generally to private IDEA settlements.

[2]The IDEA was originally named the Education of the Handicapped Act, until renamed in 1990.

cases.  This decision brought a quick response from Congress, with bills filed almost immediately seeking to amend the statute to add an express fee-shifting provision.

In 1986, Congress passed the Handicapped Children's Protection Act ("HCPA").  HCPA was the result of a series of legislative compromises; what began as a simple fee-shifting clause mimicking other federal civil rights statutes evolved into a more complex provision, with multiple restrictions on who could recover fees, when they could be recovered, and the amount of recovery.

HCPA's basic authorization for fees provides:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

20 U.S.C. § 1415 (i)(3)(B).  Several other provisions modify this authorization.  If the relief obtained is equivalent to the school system's prior settlement offer, no fees are awarded for services performed after the offer was made:

> (i) Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if--
>
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and

> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

Id. § 1415(i)(3)(D)(i). The exception to this rule applies if the parents were "substantially justified" in rejecting the offer. Id. § 1415(i)(3)(E). Section 1415(i)(3)(D)(ii) provides in relevant part that attorneys' fees may not be awarded (at the discretion of the state) for work done in mediation conducted before the filing of a formal request for a hearing. In addition, HCPA also provides for a reduction in fees if the court finds that the parents unnecessarily delayed the final resolution of the proceeding. Id. § 1415(f).

In 1997, the IDEA was reauthorized via the Individuals With Disabilities Education Act Amendments of 1997. Pub. L. No. 105-17, 111 Stat. 37 (1997). The legislation left intact the fee-shifting provisions set forth supra, but added new limitations on the recovery of fees for work pertaining to certain IEP team meetings and mediation activities. Id.

B.     The Buckhannon decision and its application to other fee-shifting statutes

In 2001, fifteen years after HCPA initially was enacted, the Supreme Court decided Buckhannon, 532 U.S. 598. There, the plaintiffs sought attorneys' fees pursuant to the Fair Housing Amendments Act of 1988 (FHAA), 42 U.S.C. § 3601 et seq., and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et

seq.[3]  532 U.S. at 601.  The plaintiffs cited the "catalyst theory" of recovery: because their lawsuit had brought about a voluntary change in the conduct of the defendant, they were "prevailing parties" and thus entitled to recover fees.  Id.

The Supreme Court rejected the catalyst theory as a basis for the fee award.  Id. at 610.  It held that the term "prevailing party," as used in the FHAA, ADA and "numerous" other federal statutes, meant a party who has received a judgment on the merits or a court-ordered consent decree.[4]  Id. at 603-04.  The Court listed several statutes, in addition to the FHAA and ADA, that employed the term "prevailing party," and noted that the term appears in numerous other federal statutes as well.  Id. at 602-03. It did not specifically reference the IDEA.

---

[3]The FHAA provides, in relevant part: "The court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs."  42 U.S.C. § 3613.  The ADA's fee-shifting provision is nearly identical:  "The court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs."  Id. § 12205.

[4]We take no position on whether forms of judicial imprimatur other than a judgment on the merits or a court-ordered consent decree may suffice to ground an award of attorneys' fees.  Some circuits have treated Buckhannon's reference to judgments and consent decrees as mere examples of the types of judicial action that could convey prevailing party status.  See Roberson v. Giuliani, 346 F.3d 75, 81 (2d Cir. 2003), and cases cited.  The Eighth Circuit, by contrast, has read Buckhannon narrowly on this point.  Christina A. v. Bloomberg, 315 F.3d 990, 993 (8th Cir. 2003).

At the core of the Court's reasoning was the concept of "judicial imprimatur"; in order to prevail, a party must achieve a "court-ordered" change in the legal relationship of the parties. Id. at 604-06. Absent this imprimatur, a federal court may be unable to retain jurisdiction so it can oversee execution of the settlement. Id. at 604 n.7. "Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties." Id. at 605 (emphasis in original).

Buckhannon's prohibition on catalyst theory-based fee-shifting applies expansively. See New Eng. Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 30 (1st Cir. 2002)(applying Buckhannon to 42 U.S.C. § 1988). As the district court noted, the principles underlying Buckhannon's holding are broadly stated and are not statute-specific. Doe, 264 F. Supp. at 72; see also Me. Sch. Admin. Dist. No. 35, 321 F.3d at 14. The Buckhannon court used "prevailing party" as a legal term of art (meaning "a party in whose favor a judgment is rendered") to be interpreted consistently across fee-shifting statutes. 532 U.S. at 603 (citing Black's Law Dictionary 1145 (7th ed. 1999)). It also relied on the general baseline "American Rule" that each party pays its own fees. Id. at 602. Moreover, the Court expressed a preference for avoiding a "second major litigation" that would frequently ensue from an application of the catalyst theory, which would involve "analysis

of the defendant's subjective motivations in changing its conduct."
Id. at 609.

Doe urges that we follow the minority interpretation of
Buckhannon set forth in Barrios v. Calif. Interscholastic Fed'n,
277 F.3d 1128, 1134 n.5 (9th Cir.), cert. denied, 537 U.S. 820
(2002).  There, the Ninth Circuit held that Buckhannon permitted
the award of attorneys' fees to an ADA plaintiff who settled
privately.  It stated that Buckhannon barred recovery of fees only
by a plaintiff who was the catalyst for legislative change, and
that the Supreme Court's limitation of prevailing party status to
plaintiffs who win judgments or enter consent decrees was merely
dicta.  Id. n.5 (citing Buckhannon, 532 U.S. at 604 n.7).

The Barrios court's reading of Buckhannon seems to
contravene the Supreme Court's unambiguous rejection of private
settlement as sufficient grounds for "prevailing party" status:

> Private settlements do not entail the judicial
> approval and oversight involved in consent
> decrees.  And federal jurisdiction to enforce
> a private contractual settlement will often be
> lacking unless the terms of the agreement are
> incorporated into the order of dismissal.

532 U.S. at 604 n.7.  Accordingly, we decline to adopt the Ninth
Circuit's narrow interpretation.  Other circuits considering the
issue have applied Buckhannon as precluding fee awards in private
settlement situations, explicitly or impliedly rejecting Barrios'
interpretation.  See, e.g., T.D. v. La Grange Sch. Dist. No. 102,
349 F.3d 469, 476 (7th Cir. 2003); John T. v. Del. County

-10-

Intermediate Unit, 318 F.3d 545, 560-61 (3rd Cir. 2003) ("We will not follow Barrios's narrow reading of Buckhannon. . . [W]e read Buckhannon to reject the "catalyst theory" whole hog."); N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n, 272 F.3d 154, 158-59 (2d Cir. 2001).

C.        Buckhannon's application to the IDEA

To date, each of the three circuit courts that have considered the application of Buckhannon to the IDEA have held that IDEA plaintiffs who achieve their desired result via private settlement may not be considered "prevailing parties," and thus cannot recover attorneys' fees under 20 U.S.C. § 1415(i).  T.D., 349 F.3d at 476-78; John T., 318 F.3d at 557; J.C. v. Reg'l Sch. Dist. 10, 278 F.3d 119, 124 (2d Cir. 2002).

Consistent with our "American Rule," in which parties bear their own fees in the absence of explicit statutory authority, Key Tronic Corp. v. United States, 511 U.S. 809, 819 n.13 (1994), we hold that Buckhannon is presumed to apply generally to all fee-shifting statutes that use the "prevailing party" terminology, including the IDEA.  See T.D., 349 F.3d at 475.  "Because this provision employs the phrase 'prevailing party'--a term of art--it must be interpreted and applied in the same manner as other federal fee-shifting statutes that use the same phraseology."  Me. Sch. Admin. Dist., 321 F.3d at 14.  That presumption may be rebutted, however, if the statutory text, structure, or legislative history

-11-

indicate that Congress intended to permit prevailing parties to recover fees where the desired result was achieved through settlement.  T.D., 349 F.3d at 475; see also Tenn. Valley Auth. v. Hill, 437 U.S. 153, 174 (1978) (examining "language, history and structure" of legislation to determine Congressional intent).  We consider each of these possibilities in turn.

1.    Legislative text and structure

Doe contends that the text and structure of § 1415(i) suggest that Congress intended "prevailing party" to include settlement-based fee awards.  She maintains that most other fee-shifting statutes are simply constructed, and that Buckhannon's holding does not extend to complex provisions such as § 1415(i).  Doe also points out that § 1415(i)(3)(D)(i) explicitly links settlement to attorneys' fees by providing that under certain specified circumstances such fees may not be awarded "for services performed subsequent to the time of a written offer of settlement to a parent."

We disagree that these features place the IDEA beyond the ambit of Buckhannon.  First, the structural complexity of the IDEA's fee-shifting provision does not, by itself, change the meaning of "prevailing party."  Although the fee-shifting provisions in the FHAA and ADA are simple, Buckhannon additionally referenced the complex fee-shifting provision in the Equal Access to Justice Act, 28 U.S.C. § 2412, by citing to the appendix in

-12-

Marek v. Chesny, 473 U.S. 1, 49 (1985). 532 U.S. at 603; see also Brickwood Contractors v. United States, 288 F.3d 1371, 1377 (Fed. Cir. 2002) (applying Buckhannon to EAJA to reverse award of attorneys' fees). The Court thus did not appear to intend to limit its holding to simple fee-shifting provisions.[5] While we recognize that the IDEA's fee-shifting provision is more complex than most, nothing inherent in its structure indicates legislative support for preserving the catalyst theory in the IDEA context. Cf. Brickwood, 288 F.3d at 1378 ("there is no basis for distinguishing the term 'prevailing party' in the EAJA from other fee-shifting statutes.")

Second, the limiting exceptions enumerated in section 1415(i)(3) do not indicate that the term "prevailing party" was intended to have a broader scope than in other fee-shifting statutes. T.D., 349 F.3d at 476; John T., 318 F.3d at 557. "[T]hese provisions do not inform anything about the meaning of the

---

[5]Doe also points to the Supreme Court's statement in Smith, 468 U.S. at 1009, that the IDEA was a "comprehensive scheme," contending that it thus stands alone from any other federal statutes. There, however, the Court simply stated that the IDEA did not create a right enforceable pursuant to § 1983 but rather could be enforced only through the mechanisms explicitly set forth in the statute. Id. at 1009-11. Nowhere in that decision did the Court indicate that the terms of the IDEA should not be construed consistent with other federal laws. In New Hampshire v. Adams, 159 F.3d 680, 684 (1st Cir. 1998), we stated that when construing the IDEA's fee-shifting provisions, "cases decided under kindred federal fee-shifting statutes, such as the Fees Act, 42 U.S.C. § 1988, furnish persuasive authority." In addition, the IDEA's fee-shifting provision was enacted after Smith, and its legislative history specifically recommends interpretation consistent with other fee-shifting statutes. See infra.

term 'prevailing party' in the IDEA because they are relevant only after a plaintiff has been deemed a 'prevailing party.'" T.D., 349 F.3d at 476. The reference in section 1415(i)(3)(D)(i) to attorneys' fees speaks only to settlement offers, not actual settlements. It does not specify whether the settlement offer is followed by additional litigation and judgment or by the successful acceptance of the offer. Thus, nothing in this text plainly indicates an intent to reimburse fees for work resulting in private settlements.

### 2. Legislative history

The legislative history of HCPA presents closer questions as to whether Congress intended to define "prevailing party" to include private settlements. The most germane legislative history available suggests simply that the IDEA's fee provisions are to be interpreted consistently with Supreme Court law and with other fee-shifting statutes. Two weeks before HCPA was passed, Representative Williams read into the record a letter by Senator Hatch: "The right to reimbursement of reasonable attorneys' fees provided for in the conference report is exactly the same right that Congress has extended to other persons protected by fees statutes – no more and no less." 132 Cong. Rec. 4841 (1986). The letter went on to state that fees may be awarded to parents "consistent with applicable Supreme Court decisions interpreting 42 U.S.C. § 1988; including interpretations of such concepts as . . .

"prevailing" parent. . .  See, for example, Hensley v. Eckerhart, 461 U.S. 424 (1983); Marek v. Chesny, [473 U.S. 1 (1985)]."  Id.

Hensley concerned attorneys' fees awarded pursuant to 42 U.S.C. § 1988.  The Congressional citation to this opinion strongly suggests an intent that the IDEA be interpreted in a manner consistent with that and other fee-shifting statutes, and not be considered sui generis.  Other circuits considering a similar but earlier Congressional statement held that Buckhannon, which expressly applied to § 1988, applies to the IDEA as well.  See T.D., 349 F.3d at 476; John T., 318 F.3d at 557; J.C., 278 F.3d at 124.[6]

Several members of Congress filed an amicus curiae brief in this case, including Senators Kennedy, Harkin and Jeffords and

---

[6]Our sister circuits focus on a Senate Committee Report produced when Congress added the fee-shifting provision to the IDEA's predecessor statute, the Education of the Handicapped Act. See T.D., 349 F.3d at 476; John T., 318 F.3d at 557; J.C., 278 F.3d at 124.  Similar to Representative Williams' testimony, the Senate Committee on Labor and Human Resources stated that "it is the committee's intent that the terms 'prevailing party' and 'reasonable' be construed consistently with the U.S. Supreme Court's decision in Hensley v. Eckerhart, [461 U.S. 424 (1983)]." S. Rep. No. 99-112, at 13 (1986), reprinted in 1986 U.S.C.C.A.N. 1798, 1803 (footnote omitted).
Doe concedes that the text of Senate Report No. 99-112 is contrary to her position, but contends that the report pertained to a bill that never became law.  Rather, the version that emerged from conference was significantly different from the bill discussed in the Senate Committee.  Accordingly, Doe maintains that the other circuits' analyses of the applicable legislative history are fatally flawed because of their reliance on Senate Report No. 99-112.  We need not grapple with this issue further, as Representative Williams' statement undeniably pertains to HCPA and says essentially the same thing as the earlier Senate Report.

Representatives Kildee, Miller and Owens. They present a detailed and nuanced argument for reading the legislative history as supporting a definition of "prevailing party" to include those who settle privately. After careful review, however, we conclude that the history is ambiguous as to this question. While a reading of the history that supports providing attorneys' fees could be teased out, it is just as susceptible to other interpretations. See, e.g., 132 Cong. Rec. H4841. "Particularly in view of the 'American Rule' that attorney's fees will not be awarded absent 'explicit statutory authority,' [ambiguous] legislative history is clearly insufficient to alter the accepted meaning of the statutory term ['prevailing party']." Buckhannon, 532 U.S. at 608. In short, the legislative history cannot supply the clear-cut intent necessary to overcome Buckhannon's presumption against settlement-based fee awards. See 131 Cong. Rec. S10,876 (1985); 131 Cong. Rec. 31,372 (1985); 143 Cong. Rec. S435,402 (1997).

For example, Doe first mentions a 1985 statement made by Senator Hatch in connection with the proposed "Legal Fees Equity Act," an omnibus bill to limit fee awards against government defendants: "The requirement of final disposition [is not] intended to preclude recovery of attorneys' fees where settlement is reached prior to judgment. Such settlements are generally desirable and so long as it can be shown that the party has prevailed on the relief sought, such an award of attorneys' fees may still be obtained."

-16-

131 Cong. Rec. S10,876 (1985). This statement was not made in reference to HCPA, and the legislation in question was never enacted. Hence, it is of limited value in determining Congressional intent as to whether HCPA was intended to cover fees resulting from private settlements.

Doe also cites a statement made in reference to the House version of HCPA, H.R. 1523, in 1985. "[I]f a parent brings an attorney to the informal complaint resolution meeting, and the school officials and the parents reach a settlement, then according to H.R. 1523 the school system is liable for the parents' attorneys' fees." 131 Cong. Rec. 31,372 (1985). The bill that emerged from conference, however, was far more complex than either the House or Senate version. This statement, then, carries little weight in guiding our understanding of what Congress intended in the version of HCPA that ultimately was enacted. See note 6, supra.

Another piece of legislative history Doe references is a statement made by Senator Jeffords during the proceedings for renewing the IDEA: "If they had a good deal and didn't accept it, they don't get attorneys' fees." 143 Cong. Rec. S435,402 (1997). This statement was uttered some ten years after HCPA's enactment, and seems to be nothing more than a casual restatement of § 1415(i)(3)(D)(i). As we have said, this provision reasonably could be interpreted as pertaining to settlement offers made before an

-17-

order of judgment, not situations such as this. In sum, Doe has not pointed to any convincing indicia of Congressional intent to define "prevailing party" to include those who prevail via private settlements.

Doe protests that at the time HCPA was enacted in 1986, the catalyst theory was widely considered a permissible basis for recovery of attorneys' fees. See, e.g., Maher v. Gagne, 448 U.S. 122, 129 (1980) ("The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees [pursuant to § 1988].").  Fifteen years before Buckhannon, she contends, Congress would have had to have been prescient to include in the statutory text or history a clear statement that attorneys' fees are intended to be recoverable following settlement.

While perhaps that may be so, the same argument would extend to any statute adopted prior to Buckhannon, including the statutes at issue in that case itself.  To rely on that argument is to disregard the Supreme Court's own conclusion in Buckhannon, which we cannot properly do.  Should Congress wish to expressly ensure that fees are available following private settlements, it may amend the IDEA accordingly.

3.   Policy arguments

Finally, Doe makes two cursory policy-based arguments for permitting fee awards in IDEA private settlement situations.  It is

far from clear whether, under Buckhannon, we should even consider such arguments.  There, the Court warned:

> Given the clear meaning of "prevailing party" in the fee-shifting statutes, we need not determine which way . . . various policy arguments cut.  In Alyeska, [421 U.S. at 260], we said that Congress had not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted."  To disregard the clear legislative language and the holdings of our prior cases on the basis of . . . policy arguments would be a similar assumption of a "roving authority."

532 U.S. at 610; see John T., 318 F.3d at 558 (refusing to consider arguments predicated on IDEA policies).

In any event, when considered on their merits, neither policy argument lifts Doe over the presumption created by Buckhannon.  First, Doe contends that we must interpret HCPA so as to effectuate one of the underlying purposes of the IDEA: the "prompt resolution of disputes regarding appropriate education for handicapped children."  Spiegler v. Dist. of Columbia, 866 F.2d 461, 467 (D.C. Cir. 1989).  This goal, although undeniably laudable, does not affect our interpretation of the term "prevailing party."  As the Seventh Circuit explained in T.D.:

> We recognize the importance and benefit of quick resolution to any litigation; particularly, litigation that involves the educational placement of a child.  But many of the same factors that make quick resolution through settlement beneficial under the IDEA apply to the statutes that were at issue in Buckhannon as well.  For instance, there are surely strong policy reasons for quickly

-19-

> resolving a disabled person's claims under the ADA. Nonetheless, <u>Buckhannon</u> held that ADA plaintiffs may receive attorney's fees only upon receipt of some judicially sanctioned victory. In other words, <u>Buckhannon</u> simply has closed the door on this argument.

349 F.3d at 477 (internal citations omitted).

Doe cites another purpose of the IDEA: to provide a "free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). If parents cannot recover attorneys' fees after settling a dispute with a school district, she argues, then the appropriate public education is not truly "free." Although this is admittedly a practical limitation on the right protected by the statute, this is no less true of other statutes creating or protecting rights that are unquestionably subject to <u>Buckhannon</u>, and so does not change the result in this case. The IDEA guarantees the right to a free education, but "it does not explicitly guarantee the right to attorney's fees incurred in pursuit of that education. . . it is not clear that it would be against the purpose of the IDEA to require plaintiffs who do not achieve judicial imprimatur on their victory to bear their own attorney's fees." <u>T.D.</u>, 349 F.3d at 477. Again, the concern is for Congress to address.

### III. CONCLUSION

Consistent with each of the circuit courts that have considered the application of <u>Buckhannon</u> to the IDEA, we hold that IDEA plaintiffs who achieve their desired result via private settlement may not, in the absence of judicial imprimatur, be

-20-

considered "prevailing parties."  See T.D., 349 F.3d at 476-78; John T., 318 F.3d at 557; J.C., 278 F.3d at 124.  Hence, Doe cannot recover attorneys' fees under 20 U.S.C. § 1415(i).

Affirmed.