Chelsea SMITH, By and Through her parents Linda SMITH and Deane Smith, Plaintiff,

v.

**FITCHBURG PUBLIC SCHOOLS, Defendants.**

No. CIV.A.02–40151–NMG.

United States District Court, D. Massachusetts, Central Division.

March 29, 2004.

Julia K. Landau, Massachusetts Advocacy Center, Theodore M. Hen–Mahan, Shapiro, Haber & Urmy LLP, Boston, MA, for plaintiffs.

Mary L. Gallant, Murphy Hesse Toomy & Lehane, Quincy, MA, for defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this civil action for attorney's fees, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, Plaintiff Chelsea Smith, through her parents, Linda and Deane Smith, seeks to recover approximately $20,000 in legal fees incurred in connection with her claim against the Fitchburg Public Schools.

## I. *Factual Background*

The following facts are undisputed and are set forth as alleged in the memoranda in support of cross-motions for summary judgment and in the oppositions thereto. At the time of the filing of the relevant pleadings, Chelsea was a thirteen-year-old student at St. Joseph's School and a resident, with her parents, of Fitchburg, Massachusetts. When Chelsea was two years old, she was diagnosed with liver cancer and underwent extensive treatment including chemotherapy, radiation and surgery. As a result of that treatment, she has suffered a partial hearing loss and ongoing gastrointestinal, respiratory and "other serious health impairments." Chelsea depends on hearing aids and classroom assistance because of her disability.

Chelsea attended Fitchburg public schools from 1993 to 1997 during which time the City of Fitchburg ("Fitchburg") provided special education services including speech and language therapy. In 1997 Chelsea's parents withdrew her from the public school and enrolled her in St. Joseph's, a private parochial school. Her special education services continued while she was enrolled at St. Joseph's.

In 2001 Chelsea became ill as a result of her earlier treatment and required multiple prolonged hospitalizations and surgeries. She therefore missed a significant amount of time at school. In August 2001, when it became clear that Chelsea's absence would be extensive, her parents requested that the principal of St. Joseph's contact Fitchburg's special education department to request special education services for Chelsea while she was hospitalized. The principal was informed that Fitchburg was not obliged to provide such services because Chelsea was a student in a private school.

In September 2001, Education, Inc., an educational vendor, began to provide Chel-

sea with educational services. The hospital in which Chelsea was a patient sent the bills for those services to Fitchburg. The City did not, however, pay those bills, claiming that it was "neither fiscally no programmatically responsible" for doing so. In October 2001, Fitchburg informed Chelsea's parents that no educational services would be provided beyond the speech therapy services required by Chelsea's Individualized Education Plan ("IEP").[1] As of November 2001, those services had not been provided.

In November, Chelsea's parents requested a hearing before the Massachusetts Bureau of Special Education Appeals ("BSEA") to obtain an order requiring Fitchburg 1) to pay for Chelsea's tutoring at home and in the hospital, 2) to convene an IEP meeting to address her special education needs and 3) to implement the IEP.

Although Chelsea was discharged from the hospital on November 11, she was unable to return to school at that time. Fitchburg persisted in refusing to provide special educational services but Chelsea's parents arranged for a private tutor to meet her educational needs. On December 4, 2001, the assigned BSEA Hearing Officer initiated a conference call during which an agreement was reached whereby Fitchburg would promptly convene a meeting of Chelsea's "TEAM".[2]

The scheduled TEAM meeting did not take place in December, 2001 or early January, 2002, but was finally convened on January 18, 2002. At that time, Fitchburg determined that Chelsea was entitled to receive "home/hospital education services" despite her enrollment in a private school. The TEAM specified that Chelsea would require up to eight hours per week of academic tutoring and that Fitchburg would provide her with a tutor beginning in February, 2002.

That same month, the assigned BSEA Hearing Officer began negotiations with counsel for both parties to attempt to settle all remaining issues and claims, including payment for tutoring, reimbursement for and provision of home tutoring, execution of the IEP and payment of fees. In March 2002, the Hearing Officer ordered Fitchburg to send Chelsea's parents "a written proposal for settlement." Although Fitchburg sent such a proposal, it did not respond to the revisions proposed by Chelsea's parents nor proffer an IEP. Only after the Hearing Officer issued an order requiring action and threatening sanctions, did Chelsea's parents ultimately receive Fitchburg's response to the proposed revisions and a proposed IEP.

The Hearing Officer ordered a response and threatened sanctions a second time in May 2002 after Fitchburg failed to respond to proposed changes offered by Chelsea's parents. On June 3, 2002 the parties conferred again about the remaining issues. At that meeting, Fitchburg agreed to send Chelsea's parents a copy of the signed settlement agreement and to execute the proposed changes to the IEP. The Hearing Officer again ordered Fitchburg to comply under threat of sanctions.

1. 20 U.S.C. § 1414(d) mandates the development of an IEP to identify a child's special education needs and to describe the necessary services to be provided by the school district.

2. Pursuant to 20 U.S.C. § 1414(d)(1)(B), the IEP Team consists of 1) "the parents of a child with a disability," 2) at least one of the child's regular education teachers, if applicable, 3) at least one special education teacher or provider and 4) "a representative of the local educational agency" who is qualified to provide, or supervise the provision of, services to meet the child's special education needs and is knowledgeable with respect to the general curriculum and the local educational agency's availability of resources.

Following Fitchburg's ultimate compliance, Chelsea's parents signed the settlement agreement and withdrew their request for a hearing. The case was dismissed on July 17, 2002.

The Settlement Agreement provided for Chelsea's special education needs and directed Fitchburg to pay for services related to those needs. It did not, however, require payment of Plaintiff's attorneys' fees but expressly permitted the Plaintiff to seek an award of such fees and costs from the Court. On August 15, 2002, Chelsea's parents, proceeding on her behalf, filed the instant action seeking attorneys' fees and related costs with respect to which cross-motions for summary judgment are now pending before this Court.

## II. *Legal Analysis*

### A. The Standard for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

The Plaintiff and Fitchburg agree that no genuine issue of material fact exists in this case. The outcome of the case, therefore, depends upon which party is entitled to judgment as a matter of law.

The IDEA provides that the parents of a child with a disability who is the prevailing party may recover, in the court's discretion, reasonable attorneys' fees. 20 U.S.C. § 1415(i)(3)(B). In 2001, the United States Supreme Court held in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) that a prevailing party does not include

> a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. *Id.* at 600, 121 S.Ct. 1835.

Although the Court in *Buckhannon* considered the fee-shifting provisions of two statutes other than the IDEA, i.e. the Fair

Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* and the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, another session of this Court has recently held that the rationale of the Court in *Buckhannon* is applicable to the fee shifting provisions of the IDEA. *See Doe v. Boston Pub. Sch.*, 264 F.Supp.2d 65, 73 (D.Mass.2003). In February 2004, the First Circuit Court of Appeals affirmed the decision in that case, holding that "*Buckhannon* is presumed to apply generally to all fee-shifting statutes that use the prevailing party terminology, including the IDEA." *Doe v. Boston Pub. Sch.*, 358 F.3d 20, 25 (1st Cir.2004), *citing T.D. v. La Grange Sch. Dist. No. 102*, 349 F.3d 469, 475 (7th Cir.2003).

▮ Being guided by those decisions, this Court agrees that a plaintiff obtaining a voluntary change in the conduct of the defendant under the so-called "catalyst theory" is not considered a prevailing party and thus is not entitled to an award of attorneys' fees. The "catalyst theory" of recovery "posits that a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601, 121 S.Ct. 1835. The First Circuit has firmly adopted the *Buckhannon* Court's catalyst theory rationale to any recovery under the IDEA. *See Doe*, 358 F.3d at 25.

▮ In the instant case, the Plaintiff attempts to characterize the change in Fitchburg's conduct as compulsory and, accordingly, professes not to seek recovery of attorneys' fees under the catalyst theory. Fitchburg's recalcitrance, according to the Plaintiff, required multiple orders and threats of sanctions to obtain compliance. She avers that those orders and threats afforded a judicial imprimatur to the change in Fitchburg's conduct and thus conferred "prevailing party" status upon

her warranting recovery of attorneys' fees and costs.

That contention falls short of morphing the ultimate outcome of this case, i.e. the execution of a voluntary settlement agreement, into a judgment on the merits or a consent decree. The ultimate settlement (rather than adjudication) of this case compels the denial of prevailing party status to the Plaintiff. Although the First Circuit decision in *Doe* left open the possibility that "forms of judicial imprimatur other than a judgment on the merits or a court-ordered consent decree may suffice to ground and award of attorneys' fees," *see Doe*, 358 F.3d at 24 n. 4, such an imprimatur is clearly lacking here.

Negotiation of the terms of any settlement usually entails a certain amount of obstinance followed by ultimate compromise. Where, as was the case here, the mere threat of sanctions suffices to promote settlement, the proceedings lack sufficient judicial involvement to award the label of "prevailing party" to either side. Moreover, this case had less judicial involvement than was present in *Doe*, where the plaintiff settled with the Boston Public Schools five minutes before a scheduled hearing at the BSEA. *Doe*, 264 F.Supp.2d at 67. The decision in that case to deny prevailing party status to the plaintiff mandates the same outcome here.

The Court is mindful of the fact that Chelsea's settlement was negotiated and agreed upon before the attorneys for either party had the benefit of the decisions in *Doe*. Although such policy arguments warrant sympathy, the Supreme Court and the First Circuit Court of Appeals rejected similar public policy arguments. *Buckhannon*, 532 U.S. at 608–10, 121 S.Ct. 1835; *see also Doe*, 358 F.3d at 29 (explaining how the "undeniably laudable" goal of encouraging prompt resolution of disputes regarding appropriate education

for handicapped children "does not affect our interpretation of the term prevailing party."). The newly articulated law in the First Circuit confirms that a party obtaining a change in conduct through a voluntary settlement is not a prevailing party under the IDEA and thus is not entitled to recovery of attorneys' fees as a result of such a change in conduct. *Doe,* 358 F.3d at 30. Plaintiff's claim here falls under that rule, and thus she cannot recover attorneys' fees under 20 U.S.C. § 1415(i).

## ORDER

Based upon and in accordance with the foregoing memorandum, the Defendant's Motion for Summary Judgment (Docket No. 11) is **ALLOWED** and Plaintiff's Motion for Summary Judgment (Docket No. 15) is **DENIED**.

**So ordered.**