Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 1, 2004      Decided December 3, 2004

No. 02-7126

REBA ALEGRIA, AS NEXT FRIEND OF THE MINOR CHILD,
ALFONSO ALEGRIA ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02582)

———

*Marc B. Tucker* argued the cause for appellants. With him on the briefs were *Thomas V.M. Linguanti, Carl W. Hampe, Marc B. Tucker, Robert I. Berlow, Myrna L. Fawcett* and *Arthur H. Fawcett.*

*Donna M. Murasky*, Senior Litigation Counsel, Office of Attorney General for the District of Columbia, argued the

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

cause for appellee. With her on the brief were *Robert J. Spagnoletti*, Attorney General, and *Edward E. Schwab*, Deputy Attorney General.

*Alice K. Nelson, Ankur Goel*, and *Francine A. Hochberg* were on the brief for *amicus curiae* Coalition of Parent and Attorney Advocates, et al.

Before: ROGERS, TATEL and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (2000), provides for an award of attorneys' fees to a "prevailing party," *id.* § 1415(i)(3)(B), a term the Supreme Court has construed in the context of other fee-shifting statutes to require judicial imprimatur on an enforceable judgment or consent order. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604–05 (2000). The district court denied appellants' requests for awards of attorneys' fees for private settlements reached prior to administrative hearings on special education placements. Appellants contend this was error because the purpose and substantive rights created by the IDEA inform the meaning of "prevailing party," and the statutory text, which carves out a specific exception to the grant of attorneys' fees after a settlement offer, indicates Congress intended to allow the recovery of attorneys' fees for private settlements as an incentive for the prompt resolution of disputes. We agree that appellants' interpretation of the IDEA's fee-shifting provisions is plausible and supported by text in the IDEA. However, appellants concede that the restrictions on attorneys' fees also can be plausibly interpreted as curtailing excessive fees, and as such does not expand the definition of "prevailing party" beyond that adopted in *Buckhannon*. In the absence of clear evidence that Congress intended the IDEA's fee eligibility to be treated differently than other fee-shifting statutes, and specifically, to allow awards of attorneys' fees for private settlements, we hold that appellants fail to overcome the presumption that *Buckhannon* applies. Accordingly, we affirm.

**I.**

Congress enacted the IDEA in 1975 to ensure that children with disabilities have available to them a "free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). To enable parents to obtain special education services for their children with disabilities, the IDEA requires states and the District of Columbia to provide various "procedural safeguards." *Id.* § 1415(a). These safeguards include an opportunity for mediation, *id.* § 1415(b)(5); a complaint process, *id.* § 1415(b)(6), with the right to an "impartial due process hearing" before the state or local education agency regarding such complaints, *id.* § 1415(f)(1); and a right of review by the state agency of a local agency's determination, *id.* § 1415(g). During the course of "any administrative proceeding," parents have "the right to be accompanied and advised by counsel." *Id.* § 1415(h)(1). "Any party aggrieved" by the final outcome of the administrative process may seek judicial review in state or federal district court. *Id.* § 1415(i)(2)(A). "[T]he court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." *Id.* § 1415(i)(3)(B).

Underlying appellants' requests for an award of attorneys' fees are proceedings involving minor children who are students in the District of Columbia Public Schools eligible for special education under the IDEA. They or their parents, guardians, or court-appointed advocates sought provision by the District of Columbia Public Schools of special education placements. Their claims were resolved through a series of administrative hearings and settlement agreements. They then sued in court for an award of attorneys' fees at the prevailing rate in the community, experts' costs, and interest.

The district court denied their motion for summary judgment with respect to the claims resolved through pre-administrative hearing settlement agreements ("private settlements"), ruling that the parties to such claims were not prevailing parties under *Buckhannon* and therefore were ineligible for an award of attorneys' fees under the IDEA. An appeal was noted from the district court's conditional

order of September 9, 2002; it is procedurally proper because that order became final on November 8, 2002. *See Sacks v. Rothberg,* 845 F.2d 1098, 1099 (D.C. Cir. 1988). Our review of the district court's denial of summary judgment is *de novo. Cicippio–Puleo v. Islamic Rep. of Iran,* 353 F.3d 1024, 1031 (D.C. Cir. 2004).

## II.

To demonstrate that they are eligible for awards of attorneys' fees under the IDEA, appellants must provide "some good reason" not to apply *Buckhannon*'s analysis of fee-shifting statutes. *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy,* 288 F.3d 452, 455 (D.C. Cir. 2002); *see also Doe v. Boston Pub. Sch.,* 358 F.3d 20, 25–26 (1st Cir. 2004); *T.D. v. LaGrange Sch. Dist. No. 102,* 349 F.3d 469, 475 (7th Cir. 2003). As the decisions of five other circuit courts of appeals demonstrate, this burden is not easily met.[1]

In *Buckhannon,* the Supreme Court spoke broadly with regard to fee-shifting statutes. While the fee requests before the Court arose under provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990 authorizing the award of attorneys' fees to a "prevailing party," 42 U.S.C. §§ 3613(c)(2), 12205 (2000), the Court observed that "[n]umerous federal statutes" similarly authorized fee awards and that it has "interpreted these fee-shifting provisions consistently." *Buckhannon,* 532 U.S. at 600, 603 n.4 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 n.7 (1983)). Viewing the term "prevailing party" to be "a legal term of art," *id.* at 603, the Court held it did not "include[ ] a party that has failed to secure a judgment on the merits or a court-

---

[1] *See Shapiro v. Paradise Valley Unified Sch. Dist.,* 374 F.3d 857 (9th Cir. 2004); *Doe v. Boston Pub. Sch.,* 358 F.3d 20 (1st Cir. 2004); *T.D. v. LaGrange Sch. Dist. No. 102,* 349 F.3d 469 (7th Cir. 2003); *John T. v. Del. County Intermediate Unit,* 318 F.3d 545 (3d Cir. 2003); *J.C. v. Reg'l Sch. Dist. 10,* 278 F.3d 119 (2d Cir. 2002); *cf. Smyth v. Rivero,* 282 F.3d 268, 274 (4th Cir. 2002). *Contra Barrios v. Cal. Interscholastic Fed'n,* 277 F.3d 1128, 1134 (9th Cir. 2002), *cert. denied,* 537 U.S. 820 (2002).

ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," *id.* at 600. The Court observed that it had never approved an award of attorneys' fees without formal judicial action. *Id.* at 606. "Private settlements," the Court noted, "do not entail the judicial approval and oversight involved in consent decrees," and "federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." *Id.* at 604 n.7. Stating that its precedent "counsel[s] against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties," *id.* at 605, the Court gave short shrift to ambiguous legislative history and to policy arguments unsupported by empirical evidence, "given the clear meaning of 'prevailing party,'" *id.* at 607–08, 610.

This court thus has applied *Buckhannon* broadly. In *Oil, Chemical & Atomic Workers*, the court treated the phrase "substantially prevailed" in the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E) (2000), as "synonymous" with "prevailing party," in denying an award of attorneys' fees for a settlement agreement. 288 F.3d at 455. The court held that the settlement, in the form of a stipulation and order of dismissal signed by a judge, "did not meaningfully alter the legal relationship of the parties" because "[i]ts only effect was to dismiss the union's lawsuit with a court order when no court order was needed." *Id.* at 458. Therefore, the requestor of fees had not "'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree," and was ineligible for fees. *Id.* at 457 (quoting *Buckhannon*, 532 U.S. at 603); *see also Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003). While acknowledging that "some good reason" could rebut the presumption that *Buckhannon* controlled, the court saw nothing in the statutory text or legislative history to suggest Congress intended FOIA fee awards to be treated differently than those interpreted in *Buckhannon*. *Oil, Chem. & Atomic Workers*, 288 F.3d at 455–56. To date, this court has declined

to follow *Buckhannon* only where controlling Supreme Court precedent, which *Buckhannon* did not explicitly overrule, interpreted a fee-shifting provision allowing an award of attorneys' fees "whenever [the court] determines that such award is appropriate," 42 U.S.C. § 7607(f) (2000), to mean, in light of a clear statement in the legislative history, that Congress intended to authorize attorneys' fees for "legitimate" lawsuits that "forced defendants to abandon illegal conduct, although without a formal court order." *Sierra Club v. EPA*, 322 F.3d 718, 723 (D.C. Cir. 2003) (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 686 n.8 (1983)).

Nevertheless, appellants contend they meet their burden. Although nothing in the plain text of the IDEA expressly indicates that Congress intended a "prevailing party" to include those parties who enter private settlements, appellants maintain that as a matter of statutory construction there is "some good reason," *Oil, Chem. & Atomic Workers*, 288 F.3d at 455, to conclude that eligibility for fees under the IDEA differs from the fee-shifting statutes in *Buckhannon*.

Appellants' purposive interpretation of the IDEA has been rejected by other circuits. *E.g., Doe*, 358 F.3d at 29; *T.D.*, 349 F.3d at 477. Here, appellants rely in part on the IDEA's purpose to ensure a "free appropriate public education," 20 U.S.C. § 1400(d)(1)(A). Because parents can vindicate their substantive rights and those of their children through settlement, appellants contend that the IDEA cannot be read to exclude attorneys' fees when settlement occurs. However, although the "IDEA guarantees the right to a free education, [ ] 'it does not explicitly guarantee the right to attorney's fees incurred in pursuit of that education.' " *Doe*, 358 F.3d at 29 (quoting *T.D.*, 349 F.3d at 477). Therefore, relying on this purpose is insufficient to overcome the presumption that *Buckhannon* applies.

Appellants also rely on the IDEA's second stated purpose "to ensure that the rights of children with disabilities and parents of such children are protected." *Id.* § 1400(d)(1)(B). To this end, Congress included various procedural safeguards in the IDEA, including notice of the right to attorneys' fees,

*id.* § 1415(d)(2)(M), to enable "full participation of the parents and proper resolution of substantive disagreements." *See Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 368 (1985). Allowing for the award of attorneys' fees for private settlements could protect children by facilitating efforts to obtain early legal representation and prompt placements, as appellants suggest. However, appellants cannot show that the right to attorneys' fees must apply to private settlements in order for the IDEA's purpose to be fulfilled. To the extent that the absence of such awards may discourage representation or settlement, such effects are insufficient to overcome the presumption established by *Buckhannon* as Congress may have fulfilled the IDEA's purpose by creating the administrative scheme itself and allowing the award of attorneys' fees at the administrative hearing and judicial stages.

Appellants' other statutory argument is based on § 1415(i)(3)(D)(i),[2] which denies awards of attorneys' fees to those who reject a written settlement offer and obtain no greater relief from a hearing officer or judge, and § 1415(i)(3)(D)(ii)[3], which limits fees for individualized edu-

---

[2]  Section 1415(i)(3)(D)(i) provides:

Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—
   (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
   (II) the offer is not accepted within 10 days;  and
   (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

[3]  Section 1415(i)(3)(D)(ii) provides:

Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection

cation programs ("IEP") meetings. Other circuits have dismissed reliance on these provisions, observing that they "do not inform anything about the meaning of the term 'prevailing party' in the IDEA because they are relevant only after a plaintiff has been deemed a 'prevailing party.'" *T.D.,* 349 F.3d at 476; *accord Doe,* 358 F.3d at 26–27. To the extent that appellants rely on the canon of statutory construction, *expresio unius est exclusio alterius,* i.e., when Congress enacts specific limitations in a general statute it is presumed to allow other circumstances not included in those limitations, *Nat'l Ass'n of Mfrs. v. Dep't of Labor ("NAM"),* 962 F. Supp. 191, 196 (D.D.C. 1997), *aff'd,* 159 F.3d 597 (D.C. Cir. 1998), we agree with our sister circuits.

Appellants contend that "[b]y carving out a specific exception to the grant of attorneys' fees after a settlement offer, [Congress used] . . . language, [that] as a matter of statutory construction, allows for fees to be awarded to parents who succeed in settlement in the first place." Appellants' Br. at 30. Unless fees are allowed for private settlements, appellants maintain, the restrictions on fee awards in § 1415(i)(3)(D)(i), (ii) would be superfluous. But, applied here, *expresio unius* does not demand the interpretation appellants advance. *Expresio unius* shows only that the IDEA allows fee awards to those who ultimately prevail at an administrative hearing or in a court proceeding and who have not rejected better settlement offers, a showing that belies appellants' superfluity contention. As the District of Columbia points out, nothing in *NAM,* 159 F.3d at 597, would "justify interpreting [§ 1415(i)(3)(D)(i)], applicable only to parents who secure a favorable decision on the merits, as textual evidence that 'prevailing party' includes parents who settle their claims." Appellee's Br. at 21. In *NAM*, the court merely construed the definition of "association" according to its terms and declined to narrow the scope of that general provision by reference to a partial exemption from it. 159 F.3d at 600.

(e) of this section that is conducted prior to the filing of a complaint under subsection (b)(6) or (k) of this section.

Neither is appellant's reading of § 1415(i)(3)(D)(ii) demanded. As the Seventh Circuit observed: "if a party pursues an unsuccessful mediation and eventually obtains a victory with judicial imprimatur, then he may recover attorney's fees for the unsuccessful mediation if it occurred [before] the filing of a complaint." *T.D.*, 349 F.3d at 476. This, too, indicates that § 1415(i)(3)(D)(ii) is not rendered superfluous if those who enter into private settlements are ineligible for awards of attorneys' fees.

However, appellants' reliance on § 1415(i)(3)(D)(i) also turns on the implication of viewing it as a means by which Congress intended to provide an incentive for settlements. As appellants explained during oral argument, § 1415(i)(3)(D)(i) was Congress's means of encouraging settlements in order to carry out the IDEA's purpose to enable children with disabilities to receive an appropriate education promptly, so as to "prepare them for employment and independent living." *Id.* § 1400(d)(1)(A). If fees for private settlements are permitted, § 1415(3)(D)(i) would encourage parents to accept good settlement offers from school districts to avoid the risk of facing additional attorneys' costs after an administrative or court hearing; it also would encourage the District of Columbia to make good settlement offers, and thereby avoid having to pay larger awards of attorneys' fees after hearings. By contrast, appellants explained, applying *Buckhannon* to the IDEA would undermine § 1415(i)(3)(D)(i)'s role in encouraging settlements: A parent who refuses a written offer to settle a complaint, and later prevails at an administrative hearing or in court but obtains a result that is not more favorable than the written settlement offer, would still be eligible for an award of attorneys' fees for work performed prior to the settlement offer, whereas those parents who accept settlement offers would be ineligible for any award of attorneys' fees. But even if application of *Buckhannon* will reduce the incentive to settle, that is insufficient to overcome *Buckhannon*'s powerful presumption about what "prevailing party" means.

Appellants' interpretation of § 1415(i)(3)(D)(i) is hardly unreasonable. In *Spiegler v. District of Columbia*, 866 F.2d

461, 467 (D.C. Cir. 1989), (citing 121 Cong. Rec. 37,416 (1975) (statement of Sen. Williams)), the court acknowledged that Congress "intended to ensure prompt resolution of disputes regarding appropriate education for handicapped children." The IDEA's text offers some support for the focus on the incentive role that Congress intended for § 1415(i)(3)(D)(i). Section 1415(i)(3)(D)'s provisions underscore the desirability of prompt placements by prohibiting awards of attorneys' fees for prehearing IEP meetings unless such meetings are conducted prior to the filing of a complaint, or where a settlement offer is made early, the parents fail to accept it within ten days, and the relief in the offer is more favorable than that later obtained. The only exception is where a parent who is a "prevailing party" was "substantially justified in rejecting the settlement offer." *Id.* § 1415(i)(3)(E). In addition, § 1415(i)(3)(F), (G) reduces awards of attorneys' fees if a parent unreasonably protracts final resolution of the disputed claim for placement but eliminates such reductions if the school district unreasonably protracts final resolution. Fed. R. Civ. P. 68,[4] on which § 1415(i)(3)(D)(i) was patterned, "express[es] a clear policy of favoring settlement of all lawsuits." *Marek v. Chesny,* 473 U.S. 1, 10 (1985).

The problem with appellants' interpretation of § 1415(i)(3)(D)(i) is not a matter of its plausibility, however.

---

[4]  Fed. R. Civ. P. 68 provides in pertinent part:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Rather it is due to the fact that, as appellants concede, there is another plausible interpretation of this provision that is consistent with *Buckhannon,* namely that urged by the District of Columbia and adopted by other circuits. Under this interpretation, § 1415(i)(3)(D)(i), and the other provisions limiting fees, " 'define situations in which attorney's fees may be prohibited or reduced' even for 'prevailing parties.' " *T.D.,* 349 F.3d at 476 (quoting *John T.*, 318 F.3d at 557). In enacting § 1415(i)(3)(D)(i), the District of Columbia contends, Congress incorporated into the IDEA the provisions of Fed. R. Civ. P. 68 simply to reduce the amount of fee awards in an administrative hearing or court proceeding, if the relief obtained is not more favorable than a timely written offer of settlement by the Public Schools. Therefore, following *Buckhannon* to preclude awards of attorneys' fees for private settlements would not undermine § 1415(i)(3)(D)(i).

The District of Columbia's interpretation is not barred by the statutory text. Even assuming appellants' incentive interpretation would be more likely to accomplish Congress's goal of ensuring prompt special education placements, the District's interpretation is a plausible view of Congress's intent. *See T.D.,* 349 F.3d at 476; *John T.*, 318 F.3d at 557. Because there are two plausible statutory interpretations of eligibility for awards of attorneys' fees under the IDEA, one of which is consistent with *Buckhannon,* we held that appellants' textual arguments fail to provide "some good reason," *Oil, Chem. & Atomic Workers,* 288 F.3d at 455, not to follow *Buckhannon.*

Appellants' other contentions, even considered in conjunction with their statutory arguments, also fail to provide "some good reason." They maintain that by 1997, when Congress reenacted the IDEA, the courts of appeals and district courts had interpreted the IDEA to allow the award of attorneys' fees for private settlements. Congress is "presumed to be aware" of the circuit and district courts' interpretation and to have "adopt[ed] that interpretation" when it re-enacted the IDEA "without change." *Lorillard v. Pons,* 434 U.S. 575, 580 (1978). However, their re-enactment argument essentially revives the catalyst theory rejected in *Buckhannon,* 532 U.S. at 605.

Appellants' reliance on the cap on awards of attorneys' fees under the IDEA in the Appropriations Acts for the District of Columbia for fiscal years 1998–2004, *e.g.*, Pub. L. No. 108–199, 118 Stat. 141 (2004), is misplaced. The D.C. Appropriations Acts do not amend the IDEA and offer no insight into congressional intent regarding fee awards for private settlements under the IDEA.

Amicus' reasons for not following *Buckhannon* are no more persuasive. First, Amicus points to anomalies that would result if attorneys' fees are unavailable under the IDEA for private settlements. Assuming such policy arguments may be considered, *see Doe*, 358 F.3d at 29 (citing *Buckhannon*, 532 U.S. at 610), the empirical evidence on which Amicus relies is not part of the record on appeal. Amicus refers to a Report by the District of Columbia Auditor that, Amicus asserts, shows that the number of administrative hearings has increased from 28% in 2001 to 59% in 2002, and that settlements have decreased by nearly 60%, and in which it is stated that D.C. Public Schools "recognizes that if attorneys' fees are unavailable there is 'a clear disincentive' to alternative dispute resolution." Amicus Br. at 8 (quoting D.C. Auditor's Report at 44). Without examining the Auditor's Report, the court cannot evaluate the context of the Auditor's conclusions. Second, Amicus expresses concern about the obstacle to judicial imprimatur for parents who enter private settlements as part of the mandatory "administrative process," for which, Amicus contends, fees are expressly authorized. The District of Columbia has eliminated the basis for Amicus' concern by treating parents who prevail at administrative hearings as prevailing parties under § 1415(i)(3)(D)(i). Appellee's Br. at 19.

Accordingly, we affirm the judgment denying appellants' requests for awards of attorneys' fees for private settlements under the IDEA.